McCann, &c. *vs* Letcher, &c.

*Case 77.*                ERROR TO THE MADISON CIRCUIT.

                         *Husband and wife.   Mistakes.*

*February* 1.    CHIEF JUSTICE MARSHALL delivered the opinion of the Court.—Judge
                 Breck did not sit in this case.

                  ON the 29th day of October, 1841, James H. Letcher
Case stated.    being much embarrassed by debts, and desirous, as a
                means of relief, to sell a valuable tract of land which
                belonged to his wife by devise from her father, and hav-
                ing made a contract for the sale, at the price of about
                about $14,000, upon an agreement with his wife, that
                the slaves, also received from her father's estate, should be
                secured to her and her children, executed a deed of trust,
                conveying in trust to R. P. Letcher, a large number of
                slaves, some of which were included in a previous mort-
                gage to Bridgee and Mason, and some others had been
                sold to J. L. Adams, who, from a regard for Mrs. Letcher,
                and in consideration of her attachment to the slaves,
                agreed that he would surrender them for her use, if he
                should be repaid out of the price of the land.   It appears,
                too, that Bridges, named above as a mortgagee, and who
                was bound for Letcher in several large liabilities, being
                a brother-in-law of Mrs. Letcher, concurred with oth-
                ers of her friends, in representing to her that it would
                be better for her to sell the land, for payment of her
                husband's debts and save the slaves; and it was the
                opinion of Letcher himself, that the sale of the land
                would relieve him from embarrassment.   Under these
                circumstances, the deed for the land was prepared and
                brought to Mrs. Letcher by the clerk, for her execution
                and acknowledgment, and she having steadily refused
                to execute it until the slaves should be secured to her-
                self and children, the clerk, an esteemed friend in whom
                she placed great confidence, wrote the deed of trust,
                for the purpose of securing the slaves as desired.   Upon
                its being executed and acknowledged by Letcher, and

upon the assurance of the clerk that it was all right, and secured the slaves to her and her children, without danger of loss, Mrs. Letcher executed and acknowledged the deed for the land, the price of which was afterwards appropriated to relieving some of the slaves from the prior mortgage, and others from the prior purchase of Adams, and to the payment of other debts of Letcher.

On the 11th day of November following the date of the deed of trust, Letcher executed a mortgage to Bridges, Baird, Fishback and others, conveying the same, and other slaves and personal property, in fact, all his visible estate, and a note held for a part of the price of the land, to secure various debts and liabilities therein specified.

In September, 1842, Mrs. Letcher, by her next friend, filed her bill against her husband and children, and against the mortgagees, alledging fraud or mistake in the deed of trust, whereby the slaves, instead of being secured to her and her children, were said to be left subject to her husband's debts, &c. And in February following, Baird, Fishback, &c., mortgagees in the last mortgage, filed their bill for foreclosure and sale of the slaves, &c.

The deed of trust recites, that "in order to secure my wife Nancy T. Letcher and her children, (naming six,) and such children as she and I may hereafter have, certain property hereinafter mentioned, *and at the same time reserve to creditors all liens for just debts now contracted*, I do hereby, in consideration of the love I have for my said wife and children, convey to Robert P. Letcher," &c., (the slaves named with their future increase,) "To have and to hold said negroes and increase for the use and benefit of myself during life, and my wife and children now living, and such as my wife and myself may hereafter have, and to be under the control of said trustee, who may, by and with the advice and consent of the said Nancy T. Letcher, dispose of any one or all of said negroes and increase, and vest the money in any manner she may direct, but the said slaves nor their increase are to be subject to any debt

McCann, &c.
    vs
Letcher, &c.

Decree of the
Circuit Court.

If A. pays to B.
a full price for
property, and a
contract is drawn
through mistake
to A. and D.
who is absent,
and has no par-

of mine hereafter to be contracted," and power is given to change the trustee.

It should have been stated that the value of Mrs. Letcher's interest in the land conveyed by her, exceeded the aggregate value of the slaves conveyed by this deed, together with the value of her husband's life estate in the land, and that all the deeds above stated, were duly recorded· Upon the hearing the Circuit Court, consisting of Judge Simpson, now being one of the two members of this Court for the revision of the decree, (Judge Breck being interested and a party,) was of opinion that the mortgagees having but an equity and Mrs. Letcher's being an elder equity, her right should prevail although the mortgagees may not have had notice of it; and therefore decreed the slaves to be in the hands of the trustee, for the sole and separate use of Mrs. Letcher, and of her children. The adherence of Judge Simpson to this opinion, would alone be sufficient to produce an affirmance of the decree by a division of the Court. It is, therefore, unnecessary for the other member of the Court to say more upon this branch of the subject, than that he doubts whether, to the extent that J. H. Letcher had an actual available interest as *cestui que trust* under the deed of trust, the 13th section of the act of 1796, (1 *Stat. Law*, 443,) does not give to his conveyance of that interest by recorded mortgage, greater effect than is in a Court of equity allowed to the transfer of a mere equity, and whether therefore the mere priority of Mrs. Letcher's equity, without notice to the mortgagees, should give it the preference. He has not, however, a decided opinion on this subject, and therefore does not on this ground dissent from the opinion on which the decree is based. But upon the construction of the deed, in which both of the Judges concur, this question ceases to be the turning point of the case.

1st. We are satisfied that the deed of trust creates no lien in favor of creditors which did not exist before its execution, but merely reserves such liens as were then upon the estate. And further, that if it had in terms created liens for existing debts, it would under the actual circumstances, be no more than this case: that A.

pays to B. a full price for property, upon a contract for his own exclusive benefit, and C. being requested to draw the deed, makes it to import a transfer to A. and D., who was absent and had no participation in the consideration or the contract, and the deed thus drawn is ignorantly accepted by A.; clearly D. could not in equity hold against A., although he may have been a creditor of B. If, therefore, these mortgagees or other creditors, claimed directly under the deed of trust, their claim would be of no avail against Mrs. Letcher, the actual purchaser. But they have no shadow of claim as beneficiaries under the deed.

2d. The recitals of the deed show that the first object was to secure the property to the wife and children, (reserving the liens of creditors, of which as already stated, there was at least one,) then what effect is to be given to the expressions importing that the grantor was to have an interest for life? Was it intended to exclude the interest of the wife and children until his death? This would be inconsistent with the expressed and actual objects of the deed, and with the terms in which the use is reserved "for the use and benefit of myself during life, and my wife and children," not after my death, but "now living, and such as we may hereafter have." He cannot have more than a joint interest with his wife and children, then six, now we believe eight in number.

3d. But was this intended to be an estate in him, an actual available interest which he could transfer, or was it intended merely to indicate such enjoyment as a husband and father may have of the property of his wife and children? Upon the clause expressing the use, this question might be doubtful, or perhaps answered in the negative. But the subsequent clause, which gives to the wife and trustee the right of absolutely disposing of the property at their will, and at any time, shows clearly that the entire use was intended to be secured to her, independently of any action by her husband, and of any interest in him. Or, in other words, that whatever interest might seem to be reserved to him, was subject to be absolutely revoked and defeated by the acts of his

---

McCANN, &c.
*vs*
LETCHER, &c.

ticipation in the arrangement, and A. ignorantly accept it, D. cannot hold in equity against A. tho' he may be a creditor of B.

A conveyance in trust by husband for the benefit of his wife and children, and such as they may thereafter have, passes a present interest, and not an interest at the death of husband alone.

This construction is rendered more manifest by conferring on the trustee power to sell with the consent of the wife.

wife and her trustee. And in this plight those who claim under his subsequent deed, must hold it if this deed is to have effect according to its terms and fair import. It is true, if the deed rested alone upon the recited considerations of love and affection, it would not prevail against the grantor's creditors and mortgagees. But it is not assailed by them as fraudulent, nor have they objected to the evidence showing the true, or additional considerations, as to the admissibility of which in this case, we have no doubt.

4th. It does not appear that the effect of the expressions importing a life estate in J. H. Letcher, or reserving the liens of creditors, was explained to Mrs. Letcher, nor is it certain, though probable, that the deed was read to her. These expressions were improperly, though not fraudulently introduced by the writer without consulting her, and the deed was received by her as the consideration of her conveying her land, on the assurance of the writer that it secured the slaves to her and her children. There is no doubt that she so understood it, and that she would not have conveyed the land on any other terms. These facts were known to many, and to one of the principal mortgagors, and were accessible to all. The subsequent mortgage was executed in the absence, and without the knowledge of the mortgagees, except one, whose debt has been paid. They advanced no new consideration on the faith of the mortgage, or of any supposed or actual interest of Letcher under the deed of trust. The mortgage conveyed all he had, and more. They are not injured by withholding from them what he had no right to convey. But if the deed fails to secure to Mrs. Letcher and her children the slaves conveyed, she and they will have lost by the mistake and unskilfulness of the draftsman, a property which she actually purchased at more than its value, and for a price of which her husband's creditors have received the full benefit.

5th. We think the construction which we have given to the deed, comports with its terms, and is necessary to carry out the actual and manifest intention of the parties. And on this ground the decree in favor of Mrs.

Letcher, and against the mortgagees was correct, whatever effect might otherwise be given to that conveyance.

The opinion of Judge Simpson is directed to be published, as presenting his views on this branch of the case, and as also correctly deciding the other questions involved.

Wherefore, the decree is affirmed.

Judge Simpson's opinion delivered in the Circuit Court.

The controlling and important question in these causes, is the right of Mrs. Letcher to relief, and the nature and character of the relief to which she is entitled.

That she had resolved not to convey her right of inheritance to the tract of land sold to Royston, unless certain slaves were secured to her and her children, and that she was induced to execute the deed of conveyance, by representations in which she confided, that the object desired by her had been effected by the deed of trust to R. P. Letcher, is made clearly manifest.

Such an arrangement she had the right to require, as the condition of her assent to the execution of the deed. Her husband had acquired in her right, a large and valuable estate; his liabilities were so great, as to threaten its total loss to her and her children, by its application to the payment of his debts and liabilities. Although deriving from her father an estate sufficient to sustain her and her children in affluence, she finds herself suddenly threatened with ruin and poverty; and her only means to avert this calamity, consists in her interest in a valuable tract of land, which her husband's creditors cannot reach without her assent. If she surrendered this, she had a right to demand an equivalent. Indeed, duty to herself and her children required it, and it is sanctioned by every sentiment of justice, and every principle of equity.

The deed of trust as drawn, fails to accomplish this end. It secures nothing to her. The property it embraces remains liable, by its very terms, to her husband's pre-existing debts, and the life estate secured by it to him, subjects it that far to his debts subsequently contracted, so that in effect as to her and her children, it is

of no value.   What decree then  shall the Chancellor render in her favor?   If she could be placed back again as she was before she executed the deed to Royston, without doing injustice to any, that perhaps would afford her ·the most ample remedy, and be at the same time, most consistent with the rules which govern Courts of equity in decreeing relief in similar cases. This, however, cannot be done.   Royston has obtained the legal title to the land, and had paid, before the institution of her suit, all the purchase money except one instalment of less amount than one third part of the purchase money.   This the Court might decree over to her, and indemnify the assignee of the note by substituting him to the rights of Bridges and Mason in the mortgage to them.   This, however, would be a very inadequate compensation to Mrs. Letcher for her interest in the land.   The purchase money amounted to upwards· of fourteen thousand dollars.   Placing upon the life estate of her husband the very highest estimate, it was not worth more than one half of the purchase money, leaving the other half as the value of her interest.

Is there any doctrine of a Court of chancery, which will preclude her from a decree, carrying into effect the arrangement contemplated by her, securing to her and her children the slaves included in the deed of trust? The fact that these slaves were given to her by her father, forms, in addition to the considerations heretofore stated, a powerful motive to influence a Court of equity to grant her this relief.   Nor have her husband's creditors any just cause of complaint.   By this arrangement made with her at the instance of some of the creditors, the fund for the payment of their debts was increased, instead of being diminished, so that they have suffered no injustice in consequence thereof.

The evidence shows that her interest in the land was of more value than the slaves contained in the deed of trust.

A wife agreed to relinquish her right of inheritance in lands more valuable, for the benefit of the creditors of the husband, provided certain slaves less valu-

It is contended, however, by the mortgagees in the last mortgage, that they occupy the attitude of purchasers without notice, and that the complainant's equity cannot be made· available against them.   It must be

admitted that the right of Mrs. Letcher is merely an equitable one, and that she cannot succeed if the mortgagees are entitled to the favorable attitude which they have assumed. In this assumption, however, they are entirely mistaken. A purchaser is one who has acquired the legal title. The legal title to those slaves vested, under the deed of trust, in the trustee, so far as James H. Letcher was himself invested with it at the date of that deed. The subsequent mortgagees obtained by their conveyance, if any thing, only an equity. That equity is younger, and consequently inferior to that of Mrs. Letcher. If they claim under the deed of trust, they have nothing but an equity growing out of the deed itself, whilst that with which Mrs. Letcher is invested, is anterior to the execution of the deed of trust, and therefore elder and superior to that set up by the creditors. There is no weight in the objection made to this view, that it does not certainly appear whether the trustee was notified of the execution of the deed, and accepted the trust previous to the time that the last deed of mortgage was made. Upon his acceptance, the deed had relation to, and took effect from the day of its date and acknowledgment before the proper officer, and as the beneficiary was present and accepted the deed, the legal title vested in the trustee, and if he had even refused to execute the trust thrown upon him without his consent, the Chancellor would not have permitted the trust to fail for want of a trustee, but would have appointed another in his place. Indeed, were it necessary, the evidence is deemed sufficient to justify the Court in coming to the conclusion, that the acceptance of the trust by the trustee, was previous to the execution of the last mortgage. If the complainant's equity required any additional strength, it would derive it from the circumstance that a portion of the slaves had been re-conveyed by Jones L. Adams to her husband, with the express understanding that they were to be secured to Mrs. Letcher and her children, and the price of the slaves was paid out of the purchase money of said tract of land. It may also be remarked, that the legal title to a number of said slaves was vested in Bridg-

McCANN, &c.
vs
LETCHER, &c.

able, were secured to the separate use of herself and children. In drawing the deed the draftsman thro' mistake, embraced as beneficiaries in the trust, the former creditors of the husband—Held that the latter could not claim to the prejudice of the wife and children.

es and Mason, the first mortgagees, at the time the last mortgage was made, and could not have passed by that deed to the persons claiming under it.

It is therefore the opinion of the Court, that Nancy T. Letcher has a right to have the slaves embraced by the deed of trust secured to her and her children, according to the stipulations of the parties at the time that she agreed to execute the deed of conveyance to Royston. And it is decreed and ordered, that the trustee, R. P. Letcher shall hold said slaves as trustee, for the sole and separate use of said Nancy, during her lifetime; discharged from all claim thereto upon the part of previous creditors, as well as from the control of her husband, and all claim to any life estate in him, set up either by him or his creditors; and after the death of said Nancy, said slaves are to be held for the use and benefit of all her children then living, and the issue of such as may then be dead. The said Nancy to have the same right to dispose of said property as is given to her by said deed of trust, it not being designed by this decree to limit her power over said property in any particular.

The hire of said slaves that has accrued during the pendency of this controversy, is decreed to said trustee for the use of said Nancy, and he is authorized to collect and appropriate it to her separate use.

The right to the note on Royston, in the hands of Daniel Breck, as assignee, is also involved in this controversy. The complainants, Baird and Fishback, claim it under the mortgage made to them and others by James H. Letcher, on the 11th of November, 1841. The defendant, Breck, holds it in his possession and claims it under an assignment made to him subsequently, by the mortgagor. As an assignment of a bond or a promissory note under the statute of this State regulating assignments, can be made on a separate piece of paper, so as to transfer the legal title in it to the assignee, no good reason suggests itself why it should not be conveyed in mortgage, as well as the other estate of the mortgagor. The question then arises, whether the mortgage embraces the note assigned to the defendant,

Breck, for if it does, nothing passed to the assignee by the subsequent assignment, but the equity of redemption of the mortgagor. The note in the mortgage is described as a note on Royston and two others. Its precise amount is given. The description in the deed of mortgage, of the note intended to be mortgaged, is precise and definite. It is not the same note subsequently transferred to the defendant, Breck; it is of a different amount, and on other obligors. That the parties intended to include this note in the mortgage there is no doubt, as it was the only note held by the mortgagor on Royston at the time.

It, however, is erroneously described, and it might as well be contended that the mortgaging of a black horse would pass the title to a bay one, which the parties intended to mortgage, but misdescribed, as to contend that in this instance the title to the note in question passed to the mortgagees. In both cases the mortgagees would have a right in equity, to have the mistake corrected, but this would constitute a mere equity, good alone against the mortgagors and those claiming under them, as purchasers with notice.

Had the defendant, Breck, notice of this equity, at the time he obtained the transfer of this note and paid for it? He denies notice positively, and no attempt has been made to fix actual notice upon him. Was the description contained in the mortgage constructive notice of the equity? Conceding it, for the sake of argument, to have been the duty of a purchaser to have examined the mortgage, and to be proper to regard him as constructively notified of its contents, the question still occurs as to the sufficiency of the description in this instance, to amount to constructive notice. Had the description been indefinite, so as to raise a doubt as to the note intended to be conveyed, it might have been regarded as sufficient to put him upon enquiry, which if followed up with due vigilance, would have resulted in full information on the subject. But here there was nothing to lead to an enquiry, the note was accurately described, nothing was left uncertain about it. Another note of a different amount and upon different individu-

McCann, &c.
vs
Letcher, &c.

als, was offered to him to purchase, there was not any thing that even created a suspicion, that the two notes were actually one and the same.

The Court is, therefore, of opinion that the defendant, Breck, holds the legal title to the note in controversy, for which he paid a valuable consideration, without any notice, either actual or constructive, of the equity of the complainant and the other mortgagees, and that their equity is not available against him.

It is, therefore, decreed and ordered that the bill and amended bills of said Baird and Fishback, against said Breck, be dismissed, and that they pay to him his costs herein expended.

The attitude of William Chenault will form the next subject of enquiry. He holds Amy and her child by purchase from Letcher after the execution of the last mortgage, which embraces said slaves. That mortgage, however, recites that a lien existed on Amy and her child, in consequence of the levy of two executions on said slaves and others, and they were conveyed in mortgage subject to said levy. The creditors claiming under said mortgage, are precluded from denying that fact. The legal title to said slaves, however, passed to the mortgagees. It might have been divested by a sale under said executions, which would have related back to the time of the levy; but a sale made by the mortgagor cannot have that effect, even if it be admitted that the money arising from the sale was applied to the payment of the execution debt.

The defendant, Chenault, however, although he cannot hold those slaves against the mortgagees, has a right in equity, to have the purchase money paid by him, with interest thereon from the time it was paid, refunded, he accounting for reasonable hire for said slaves, taking into consideration the expenses of raising the child, paying taxes and all other necessary expenditures in relation thereto, and to make this estimate, Joseph Turner is hereby appointed a commissioner, who may hear evidence on this subject, and report the same, together with his proceedings in the premises, to the Court.

Slaves were mortgaged subject to an execution levied. and a sale made by mortgagor and the proceeds applied to pay off the execution— Held that the mortgagees could not subject the property without satisfying the purchaser to the extent of the lien recognized by the

Chenault's right to have the purchase money refunded, results from the fact, that the money was applied to the payment of said executions. Although this is not positively and certainly proved, the evidence justifies the Court in coming to this conclusion.

The administrators of Isaac Marksberry have not made it appear that the debt due to their intestate is to be regarded as a debt secured by the mortgage bearing date the 11th November, 1841; and the Court is of opinion, and so decrees, that said debt is not entitled to any portion of the mortgaged effects until the debts therein specified are satisfied.

The mortgagees in said mortgage have a right to have all the property embraced by it, except the slaves included in the deed of trust, applied to the payment of their demands and liabilities, and the Court will proceed to make such orders and decrees as are equitable and proper to effect that object. They are also entitled to the hires arising from the slaves in the mortgage, which are not embraced by the deed of trust.

Baird and Fishback are decreed to pay to Nancy T. Letcher, that portion of her costs which accrued in the controversy with them in relation to her right under the deed of trust.

The complainants, Baird and *Letcher*, by their counsel, waived their exceptions at the bar, before the cause was heard, to the deposition of James H. Letcher, so far as it was based upon the ground of his being a party to the suit, and the Court overruled it so far as based on the other grounds stated in the exception. The exception to the conversations of Mrs. Letcher, is sustained in part, and overruled so far as they were had with any of the mortgagees or with the draftsman of the deed of trust before it was executed. The exception to the opinion or understanding of witnesses and to the admissibility of parol evidence to prove the contents of a writing or the date or amount of an execution, is sustained. The other exceptions are overruled.

It is further decreed and ordered, that the receiver, Walker, pay to the clerk and officers of this Court,

McCann, &c.
vs
Letcher, &c.

mortgage and interest, subject to reduction for hire during the possession of the purchaser, less by the expense of young negroes, taxes, and other necessary outlay by him.

Mortgagees entitled to the hire of slaves placed in the hands of a receiver in satisfaction of the mortgage debt.

BULL'S EX'RS.   their fees in this case, against the complainant, Nancy
*vs*
BULL'S CREDI-   T. Letcher, out of the fund in his hands.
TORS.
               *J. & W. L. Harlan, Turner and Woolley & Kinkead*
               for plaintiffs; *Caperton* for defendants.