

HUSBAND AND WIFE—MARRIED WOMEN.—A relinquishment of her contingent interest in her husband's real estate, by the wife, her husband being alive, is a valuable and sufficient consideration for a conveyance by her husband, or procured by him, to her, of property which may be considered but a fair equivalent for such interest; and such conveyance will be deemed valid or invalid as it may be shown to be fair or fraudulent, and the comparative value of the respective estates may be taken into consideration.

WITNESS—HUSBAND AND WIFE.—Where the husband and wife are both parties to an action, but the subject matter in controversy is claimed by the wife, and, under the issues in the cause, the husband discloses no such interest as would render him a competent witness in his own behalf, his testimony ought not to be admitted.

PRACTICE IN SUPREME COURT.—Improper evidence, if allowed to be given and not objected to below, will not be available to reverse the judgment, in this Court.

APPEAL from the *Franklin* Circuit Court.

HANNA, J.—A suit was instituted by the State, on relation of the Auditor, against *Larue* and wife, mortgagors of certain property to a trust fund. Junior incumbrancers were made defendants, to-wit: *Hollowell, Haines,* and *Roberts,* each of whom had judgments rendered in 1858 and 1859, against one *M. V. Simonson,* in whose wife, *Catharine,* the title, by deed dated in 1852, appeared to rest, as the remote grantee of said *Larue.*

There was no controversy about the right of the plaintiff to recover; nor is there any question made here in that behalf.

The question is, who shall have the overplus after the payment of the said mortgage debt?

*Mrs. Simonson* pleaded that, previous to the purchase of said property, her husband had sold real estate of the value

Hollowell et al. *v.* Simonson et al.

of 3,000 dollars, which had been accumulated by their joint labor for 25 years; that she refused to join in the deeds thereto unless this property should be purchased for her, and in her name; that it was agreed that it should be so purchased, at the sum of 1,200 dollars, subject to this mortgage for 300 dollars; that her husband was then, and for several years afterwards, solvent, having property, other than this, more than sufficient to pay all his debts, to-wit: to the value of 2,000 dollars; that she purchased said property with funds which she claimed to be her own; that she denied the land, &c., ever did belong to her husband; that the debts set up in the answer of *Hollowell, Haines,* and *Roberts,* were not in existence at the time she made said purchase, but were created afterwards, &c.; that she would not have released her interest in the lands sold by her husband, but for the agreement made in good faith, that this property should be hers, &c.

This answer was filed in response to the pleadings of said *Hollowell* and *Haines,* in which they had set up the judgments obtained by them and *Roberts,* and charged that the indebtedness to *Hollowell,* of some 800 dollars, and to *Roberts* of 1,200 had accrued before the deed was taken by *Mrs. Simonson,* and that the same was, by the said *M. V. Simonson,* fraudulently procured, and so taken by the grantee, in fraud of their rights, &c.

There was a demurrer overruled to the answer of *Mrs. Simonson,* which presents the first point in the case. Somewhat similar questions are also involved in instructions given and refused, namely, whether, as against existing creditors, a valid agreement can be made by a solvent husband and his wife as to a provision for the latter out of the property accumulated, as in said answer set up, and upon the consideration stated therein.

We have no doubt the answer of *Mrs. Simonson* presented a good defence, but as it contains allegations not supported

by the proof, nor alluded to in the instructions—namely, that the purchase was made with her property, and at a time when her husband was not in debt, we will pass it, and consider the questions involved in the instructions, in view of the evidence before the Court.

The evidence showed that, at the date of the deed to *Mrs. Simonson*, her husband was bound as a surety for the debt to *Hollowell*, then of some 600 dollars; and tends to show that he also was responsible for some 1200 or 1400 dollars more, which he had received for another person. The evidence, aside from that of *Simonson*, pretty clearly shows that, he was then worth, including the amount paid for this land, some 5,000 or 6,000 dollars, and, if his evidence is considered, some 10,000 dollars.

We understand it to be well settled, upon ample authority, that a relinquishment of dower by the wife, the husband being then alive, is a good and valuable consideration for a conveyance by the husband, or procured by him, to the wife, of property which may be considered but a fair equivalent; and that the same will be viewed as valid or not, as it may be shown to be fair or fraudulent, and the comparative value of the respective estates and interests may be taken into consideration. Levinz 146; *McCann* v. *Letcher*, 8 B. Mon. 326; *Ward* v. *Shallet*, 2 Vesey sen. 16; Atherly on marriage settlements 162. This proposition is founded upon the principle that, whatever is taken from the funds of the husband, whereby he might discharge his debts, is replaced by an equivalent from the funds of the wife, which his creditors could not otherwise reach. *Hunt* v. *Depruy*, 11 B. Mon. 286; *Marshall* v. *McDaniel*, 8 *id.* 175; 5 *id.* 305; *Bullard* v. *Briggs*, 7 Pickering 533. As dower interest was a right which a husband could not convey, so as to defeat it, it belonged not to him but to the wife, and her title was paramount to that of the husband, and it necessarily followed, it could not be

·taken for his debts without her consent. *Adset* v. *Adset*, 2 J. C. Rep. 457.

From these propositions and principles, the conclusion might well follow, that if the transaction was fair and the consideration received but an equivalent for the interest or estate granted, it might be supported notwithstanding the fact, that the husband's debts at the time were more than equal to the amount of his property. Of course this might involve inquiry as to the value of her interest conveyed, as compared with the consideration received by her. This comparative value is inquired into for the purpose of determining the honesty of the transaction. As a matter of course, this class of evidence is not of so. great value or importance in a case where, after thus providing for the wife, the means in the hands of the husband are much greater than the debts he may owe, or when he owes nothing, if the transaction is not tainted with fraud. That she should obtain a fee simple for a contingent life estate, would not matter, except as determining the character of the transaction as above indicated.

There is a bill of exceptions in the case which professes to embody all the evidence. It is apparently contradictory in its statements, in this, that in the first part of the bill, it shows that said defendants *Simonson* and wife "offered the defendant, *M. V. Simonson,* as a witness, who was examined as a witness for the defendant, *Catharine.*" The evidence of said *Simonson* is not set forth in that part of said record, but some 70 pages further forward in the record appears this entry: "*M. V. Simonson* examined, (for himself.)" His testimony then follows, and related alone to his pecuniary condition before, at the date of, and after the date of, the deed to his wife for the property in controversy.

The questions on this are, first, whether he was a witness in his own behalf, or his wife's? Secondly, whether a hus-

band could thus testify generally in his own behalf, but, as in the case at bar, incidentally to the benefit of his wife?

As it is stated that the record contains all the evidence, we cannot presume that *Simonson* gave any testimony in behalf of his wife, at the time the Court authorized an examination to elicit such evidence from him. The order of the Court therefore, in that respect, however erroneous, appears to have been harmless.

*M. V. Simonson* answered the pleading of *Hollowell* and *Haines* by a denial.

It does not appear in the record, that the introduction of the evidence of said *Simonson*, in his own behalf, was objected to. But it is said there was no issue between him and his said co-defendants to which his evidence could be directed.

The pleadings stood thus:

First, a complaint against *Larue* and wife, as mortgagors, *Miller* as grantee of *Larue*, and *Mrs. Simonson* as grantee of *Miller*, and charging that *Mr. Simonson* bought and paid for the property, and procured the deed to be made to his wife, against *Hollowell*, *Haines*, and *Roberts*, each as incumbrancers by judgments younger than the mortgage.

To this there was a general denial by *Larue*, *Miller*, and *Roberts*. *Hollowell* and *Haines* each answered, charging the purchase by *Simonson* of said property, and that he had fraudulently caused it to be conveyed to *Mrs. Simonson*, &c. *Simonson* did not answer the complaint, but denied the answer of said *Hollowell* and *Haines* as before stated. *Mrs. Simonson* answered as before stated. *Hollowell* and *Haines* in reply denied the answer of *Mrs. Simonson*, and also replied affirming the indebtedness of *Mr. Simonson* at the date of said deed, and that it was made to defraud his creditors. Under these pleadings, was there any issue to be tried, in which *Simonson* had such interest to be protected, as would authorize his introduction as a witness? and if not, what was

Hollowell et al. *v.* Simonson et al.

the effect of his introduction, without objection, and the evidence he gave?

We cannot perceive that *Simonson* had such an interest, under these issues, as would permit him to be a witness. This being the case, it follows that his evidence was directed wholly to the issues being tried between *Hollowell* and *Haines*, and *Mrs. Simonson.* The question is not, therefore, presented by this record as to his right to testify in his own behalf, although such testimony should incidentally bear upon the issues made by his wife. As the testimony of said witness was irrelevant to any issue to which he was a party, and was applicable only to the issues to which his wife was a party, he was, as to such evidence, incompetent. But as the evidence thus given, ostensibly in his own behalf, but really in the interest of his wife, does not appear to have been objected to, the question is, what was the effect thereof?

It has been often held that, although evidence may have been given that, if objected to, would have been excluded; yet having been admitted without objection, it can not be made available on appeal to reverse the judgment.

The further question was, presented in the proceedings, whether said *Hollowell* could show other transactions, after the date of said deed, in which said *Simonson* loaned money, and took notes payable to his wife, for the purpose of defrauding his creditors, upon the trial of the issues, as to the validity of said deed.

This suit was instituted in 1862, and tried in 1863. Ten years had elapsed after the transaction, which was sought to be set aside as fraudulent. The offer to make the proof, above indicated, did not show to the Court the time the money should have been loaned, &c., but stated that it was "after the voluntary conveyance;" it might have been immediately preceding the trial. At such a length of time, we can not see that any connection between the two acts could

be presumed, so that the first should be considered void, even if the second was invalid or fraudulent.

We must presume in favor of the ruling of the Court. If such proof had been permitted, and had shown a loan, &c., several years after the making of the deed, it would have been irrelevant, unless the connection had been also shown, directly or circumstantially, between the two transactions.

*Per Curiam.*—The judgment is affirmed, with costs.

*Wilson Morrow*, for the appellants.

*Nelson B. Rariden, Geo. Holland* and *C. C. Binkleg,* for the appellees.