### SMITH *v.* SEIBERLING *et al.*

*(Circuit Court, W. D. Missouri, W. D.*   August 6, 1888.)

**1. HUSBAND AND WIFE—CONVEYANCES BETWEEN—WITHOUT TRUSTEE.**
Though a conveyance of land from husband to wife, without the intervention of a third party, is ineffectual to pass a legal title, it will be upheld in equity, if made in good faith, and upon valuable consideration.

**2. SAME—CONSIDERATION—FRAUDULENT CONVEYANCES.**
A conveyance by a husband to his wife of land valued at $4,000, in consideration of her release of dower in other lands held by him, then valued at $38,000, subject to a mortgage of $17,500, in which she had joined, is upon sufficient consideration, and valid against the husband's creditors, where there is no proof of fraudulent intent, and it appears that the husband was engaged in an extensive business and in good credit at the time, though there is some evidence as to his being consciously embarrassed.[1]

**3. SAME—WIFE'S SEPARATE ESTATE—WHAT CONSTITUTES.**
As by Rev. St. Mo. § 3295 real estate coming to a married woman by gift or grant during coverture is exempt from the debts of the husband, a grant of land by the husband to the wife will, in equity, be regarded as for her sole and separate use, though not so expressed in the deed.

In Equity. Bill by a married woman to protect her separate property against execution for her husband's debts.

*English & Stonestreet,* for complainant.

*Hudson & Tufts,* for respondents.

PHILIPS, J. In 1886 the firm of Seiberling, Miller & Co. obtained judgment in this court against one Jacob M. Smith. Under execution issued thereon the land in controversy in this action was levied upon. This land consists of about 40 acres, lying near the city of St. Joseph, in this state, and for convenience it will be designated in this opinion as the "St. Jo Property." Upon such levy being made, the complainant herein filed her bill in equity against the said judgment creditors, mak-

[1]As to when a conveyance to a wife will be upheld as against the husband's creditors, and when declared fraudulent and void, see Buhl v. Peck, (Mich.) 37 N. W. Rep. 876, and note; Dull v. Merrill, (Mich.) 36 N. W. Rep. 677; Whann v. Atkinson, (Ala.) 4 South. Rep. 681, and note; Manufacturing Co. v. Mastin, (Iowa,) 39 N. W. Rep. 219, and note.

ing Jacob M. Smith, by guardian, a co-defendant, he having been declared a lunatic. The complainant and said Jacob are husband and wife. The bill sets up that the complainant is the owner of said land; that the same was conveyed to her by the said Jacob M. Smith on the 17th day of December, 1880, in consideration of her relinquishment of her dower interest in certain other lands of her said husband. The bill asks that said levy be stayed, and that the legal title in and to said lands be vested in her, as she is already the owner of the equitable interest therein, as against her said husband and the judgment creditors. The proof in this case shows the deed was made to complainant as alleged.' The debt for which the judgment was rendered was evidenced by a promissory note from said Jacob M. Smith to said Seiberling, Miller & Co., of date subsequent to said conveyance, but the note was given in settlement of a running account, which had its inception prior to said conveyance. The deed in question, being from husband to wife directly, without the interposition of a third party, was ineffectual to pass the legal title. Such a deed and contract, however, do pass the equitable title, which a court of equity will respect and protect; and it is within the province of this court to transmute this equitable into a legal title. So that, for the purposes of this controversy, the conveyance from Jacob M. Smith to the complainant may be regarded as effectual to have placed the title to this land in her as against him.

The validity of this deed is assailed by the judgment creditors upon the grounds that it was voluntary, without sufficient consideration, and was collusive and fraudulent as against the creditors of the grantor. A husband may convey his property to his wife as a gift; and the obligation of love and affection, springing from the marital relation, is a sufficient consideration to support it against him, and even against subsequent creditors, when made in good faith. *Pepper* v. *Carter*, 11 Mo. 344. But, on the maxim that a man must be just before he is generous, such transfer of property will not stand when its effect would be to hinder or delay the collection of his just debts. A man in insolvent circumstances may not so convey his property to his wife, free from the claim of his creditors. The contention of the complainant is that she occupies in this controversy the attitude of a purchaser for value, and in good faith; that the real consideration for the deed to her was the relinquishment of her dower interest in certain other lands then owned by her husband. The law is well settled that such relinquishment by the wife constitutes a valid and good consideration for a conveyance by the husband to her of other property, and enables her to maintain the attitude of any other purchaser. *Caldwell* v. *Bower*, 17 Mo. 564; *Woodson* v. *Pool*, 19 Mo. 340; *Bullard* v. *Briggs*, 7 Pick. 533; *Hollowell* v. *Simonson*, 21 Ind. 398. Although the dower of the wife in the husband's land during coverture is denominated an inchoate right, yet it is analogous to an estate in land, and is the frequent subject of contract between husband and wife, recognized and enforced by the courts as forming the basis of a valuable consideration; and, if such a contract be free from fraud, it will be upheld. 1 Bish. Mar. Wom., §§ 722, 723, 758; 1 Scrib. Dower, 644.

The first question, therefore, to be considered is one of fact: What was the consideration of the deed from Jacob Smith to the complainant? The consideration expressed in the deed is $4,000. The real consideration, notwithstanding the recitation in the deed, is the subject of inquiry and ascertainment by parol proof. *Henderson* v. *Henderson*, 13 Mo. 152; *Laudman* v. *Ingram*, 49 Mo. 212. The evidence, in brief, is that in 1880 Jacob Smith was seized of several parcels of land in the city of Quincy, Ill., and vicinity, which at that time was estimated to be of the value of about $38,000, to which is to be added the property in suit, say of the value of $4,000, making in the aggregate about $42,000. On the greater part of this property in Illinois, in 1880, there were deeds of trust given by Smith to some of his creditors, in which the wife joined. The amount of debts expressed in these deeds was $17,500. The evidence shows that on the 15th day of December, 1880, Smith conveyed three lots in Quincy to one Stuckman, for the expressed consideration of $1,800. These lots were unincumbered. The testimony of Mrs. Smith is that her husband, who had recently removed from Quincy, Ill., to Atchison, Kan., was preparing to make sale of the Illinois property, with the view of putting all his effects into a pork-packing establishment in which he was engaged at Atchison; and that she told him she felt that he ought, before he deeded away her dower interest in the lands, to make some provision to secure to her some of his land in lieu thereof, so that she could have a home in case of misfortune in his adventure at Atchison; and that she would not consent to relinquish her dower interest in the Illinois lands unless he would deed to her the St. Jo tract of land; that, with much reluctance, he finally agreed to do so. Accordingly, she joined in the deed then made. This was evidently the Stuckman deed, which was made on the 15th day of December, 1880, just two days prior to the date of the deed for the St. Jo land. She is corroborated by her son in her testimony as to her unwillingness to convey away the Illinois land unless her husband would deed to her the land in controversy. The evidence further shows that afterwards, in 1881, she joined her husband in deeds to various parties for the greater part of the other lands in Quincy. One Stockwell, a large cattle dealer, and man of affairs, deposed that he was present when Mrs. Smith was called upon to relinquish her dower interest in some land in Quincy, Ill., when she protested that she would not do so unless her husband secured to her other lands in lieu thereof. It is sought by respondents' counsel to impeach this testimony of Stockwell by the fact that the deed then acknowledged was executed in 1881, and that Mrs. Smith herself deposed that her husband was then absent in the State of Illinois. This apparent contradiction is, to my mind, quite satisfactorily explained by the testimony of Mrs. Smith, who was rigidly cross-examined respecting this statement of Stockwell. The witness Stockwell did not claim that the conversation detailed by him occurred prior to the making of the deed in question. Mrs. Smith states that the occasion referred to by Stockwell was in 1881, when he and the notary came to her to execute another deed to some of the Quincy property; and that she protested against it unless her husband would make further

provision for her. Her explanation for doing this, then, after she had received the deed to the St. Jo land in consideration of her consent to join. in conveying the Quincy land, was that she felt she had not received a sufficient consideration in the St. Jo land. Her whole testimony bears on its face such indication of probability, so persuasive in its character, as to forbid the conviction in my mind of perjury on her part. Unless, therefore, it can be fairly and reasonably inferred from any .or all of the facts and circumstances in proof that there was in this transfer the element of collusion and fraud between husband and wife, indicating that the conveyance was merely colorable, having for its scheme the purpose to cover up and screen this property from the husband's creditors, it must stand as any other purchase based upon a valuable con-.sideration.

The relative value of the property conveyed to the wife to the other property owned by the husband is an element to be considered in determining the *bona fides* of the transaction. There may be such a disproportion between the estate conveyed to her and her dower interest as to discredit the integrity of the transfer. *Bullard* v. *Briggs*, 7 Pick. 533, :538, 541; *Hollowell* v. *Simonson*, 21 Ind. 398; *Ward* v. *Crotty*, 4 Metc. .(Ky.) 59. The only witness aside from complainant who deposed to the value of the St. Jo property placed it at $3,000. Accepting the valuation of $4,000, expressed in the deed, as more probable, we will consider this aspect of the question on this basis. As already stated, the estimated value of this property in 1880, including the St. Jo property, was about $42,000, with an incumbrance thereon of $17,500, leaving an excess of $24,000. While she had joined in the mortgage deeds, her right of dower was not thereby extinguished. It was only postponed to the rights of the mortgagees. Upon satisfaction of the debts her dower interest would remain intact. It is inferable from the evidence that at the time of the execution of the deed from the husband to wife his business affairs were such as not to unreasonably justify the expectation that he would liquidate his debts without foreclosure. This, coupled with the fact that the St. Jo property had been deeded to the husband by a near relative, with the understanding between them that the relative was not to be disturbed in the possession thereof during his life, which was at least an obligation deemed binding in morals on the parties to that understanding, enforce the conclusion that there was no such inequality between the value of this property and the wife's dower interest, at that time, in the other lands as to justify an impeachment of this conveyance. Nor do I find sufficient proof of the existence of extrinsic fraud and collusion to invalidate it. It is true, there is evidence of Smith's financial embarrassment in 1880, and of his consciousness of the fact. But there are conspicuous facts in proof well calculated to warrant the impression which Mrs. Smith deposes she had of her husband's solvency. His business operations had in no degree abated. As highest proof of his business reputation and credit, a committee of representative business men of Atchison, Kan., headed by the governor of that state, visited Quincy in the spring of 1880, to persuade Mr. Smith to abandon his

extensive operations at that point, and establish at Atchison a plant for a pork-packing factory. On inquiry and investigation made they learned from the foremost business men and bankers at Quincy that Smith was regarded as solvent, and a thoroughly active and reliable business man. His operations in Quincy then amounted to hundreds of thousands of dollars a year. His credit at the bank was good, and apparently beyond suspicion. Such was his business and financial standing that this committee at Atchison raised and turned over to him $22,500 in money, to which he added of his own means a sum sufficient to complete a factory that cost about $100,000; and at the time of this transfer of land to his wife he was in the full tide of this new adventure. There were no suits pending and against him, and no judgments. If these business men at Quincy and Atchison then entertained such marked confidence in his solvency and business tact, and the firm of Seiberling, Miller & Co. themselves were trusting and confiding in him, is it to be maintained that a confiding wife, who seems to have been domestic in her tastes and habits, rather than speculative, or inquisitive about her husband's affairs, should have known more of his solvency and real condition? To take this property from her under such circumstances, it seems to me, would be to act more on suspicion than proofs.

The final contention of respondents' counsel is that this property can be protected against her husband's debts only by having been vested in the wife as her sole and separate estate, and this must be evidenced by the deed itself, and no extrinsic evidence is admissible to control the language of the deed, which in this case vested in the wife only a legal, as distinguished from a separate, estate; citing *Tennison* v. *Tennison*, 46 Mo. 77; *Schafroth's Adm'r* v. *Ambs*, Id. 114; *Bank* v. *Taylor*, 53 Mo. 444. This is a misconception of the law of these cases as applied to this case. By statute of the state of Missouri, where this land is situated, the real estate which comes to a married woman by gift or grant during coverture is exempt from the debts of the husband. Section 3295, Rev. St. 1879, concerning married women. An ordinary deed of conveyance to a married woman, without apt words creating what is known as a separate estate, invests her with a legal estate in the land, which is as effectually protected against the husband's sole creditors as if made to a trustee to her separate use, with the exception that the annual products arising therefrom may be liable for the husband's debts created for family necessaries, etc. There is also high authority holding that, while such a deed as this is void at law, it is good in equity, and a court of equity will effectuate the manifest purpose of the parties, as the law presumes it was the intention to convey an estate for the separate use of the wife. *Sims* v. *Rickets*, 35 Ind. 181. The result is that the decree will go for the complainant.