HILBISH *v.* HATTLE.

[No. 17,880.   Filed May 15, 1896.]

DIVORCE.—*Non-resident Defendant.*—*Collateral Attack.*—Where notice is given to a non-resident defendant in a divorce proceeding, as is provided by the statutes of the state in which such proceedings

are had, the judgment of divorce will be secure against collateral attack.

SAME.—*Constructive Notice.*—*Effect of Divorce on Property Rights of Non-resident Defendant.*—*Statutes Construed.*—Where the husband obtains a divorce from his wife by constructive notice, the wife being a non-resident of the state in which the divorce proceedings were had, such divorced wife could not, under the statutes of this State, section 2660, Burns' R. S. 1894 (section 2499, R. S. 1881), and sections 1060, 1061, Burns' R. S. 1894 (sections 1048, 1049, R. S. 1881), have any rights in his property by virtue of any marriage relations with him, although said court did not, in such divorce proceedings, adjudicate the property rights of the parties.

SAME.—*Post-nuptial Contract.*—*Effect of on Inchoate Interest of Wife.*—Where a post-nuptial agreement is made by a husband and wife in division of property, prior to a separation and divorce, in all respects fair and adequate in proportion to the property of each, and the portion of the property therein given to the wife was received by her in full of all demands against her husband, and in full of her inchoate rights or contingent rights in his property as his wife or his widow, such contract will be upheld, and will bar a recovery by the divorced wife of any interest in the estate of the husband at his death, by virtue of the former marital relations.

From the Elkhart Circuit Court.    *Affirmed.*

*Osborne & Zook*, for appellant.

*F. E. Baker* and *C. W. Miller*, for appellee.

HOWARD, J.—This was an action for partition, brought by appellant against appellee, asking that one-third in value of certain lands described in the complaint, and formerly owned by Jacob Hilbish, deceased, be set apart to her as surviving wife of said decedent, said lands having been conveyed by her said husband during their marriage, without her having joined in such conveyance.

The appellee answered in general denial, and also filed a cross-complaint, asking to quiet his title to the lands claimed by appellant.

The court, at the request of the parties, made a special finding of the facts in the case, from which it appears: That the appellant and her said former

husband, Jacob Hilbish, were married in Union county, Pennsylvania, in 1839, removing to Elkhart county, Indiana, in 1874, where appellant has ever since resided; that appellant and the said Jacob Hilbish ceased to live together as husband and wife in 1877; that on February 24, 1877, appellant brought suit for divorce and alimony, to which the said Jacob filed a cross-complaint; which complaint and cross-complaint were dismissed October 4, 1877; that, on March 13, 1878, appellant filed her complaint against her said husband on an account for money, to the amount of $6,000.00, which she claimed to have loaned him at various times during their marriage; that pending said last suit, on May, 30, 1878, the parties entered into the following agreement:

"This agreement witnesseth, that said Jacob Hilbish and Susannah Hilbish, being husband and wife, and there being irreconcilable differences between them, by reason of which they have separated and do not contemplate again living together as husband and wife; and as a proper and just division of their property, the said Jacob has this day conveyed to the said Susannah Hilbish one hundred acres of land in section 4, T. 36, N. R. 6 E., in Elkhart county, Indiana. Now, therefore, the said Jacob Hilbish agrees to remove from said lands all incumbrances and deliver the same to the said Susannah Hilbish, together with all the crops, buildings, and appurtenances thereunto belonging, free from all incumbrances; and when such incumbrances are removed the said Susannah shall accept the said deed and lands in full of all claim upon said Jacob, either for moneys heretofore loaned him, or other demands against him, and in full of all her inchoate rights or contingent rights in his property as his wife or as his widow, if she should survive him; and in full of all her claims upon him for her future

support and maintenance; and she hereby releases him and his estate from all demands and claims in any way arising out of any of said matters. It is further agreed, that the suit now pending in the Elkhart Circuit Court shall be dismissed at the costs of the defendant herein, and, that the said Susannah shall not hereafter contract any debts against the said Jacob, nor look to him in any manner for her support or expenses, and that a separation between the said parties is hereby effected by mutual consent; and, in consideration of the premises, the said Jacob Hilbish hereby agrees and does release and surrender all his rights, inchoate and contingent, in the said real estate so conveyed to the said Susannah Hilbish, and in and to all her separate estate or property that she now has, or may have, or become seized of hereafter, and hereby releases her and her estate, if he should survive her, from all demands for services and earnings, and all claims, contingent or otherwise, by reason of the said marital relations between them. The intent of this agreement being that as to all the property hereafter acquired or now owned by either of said parties, the same shall be free from all claims by the other, either while they live or after either of them may die."

The court further finds, that, in making said agreement said Susannah Hilbish was represented by Judge J. D. Osborne, as her attorney, and said Jacob Hilbish was represented by Judge H. D. Wilson, as his attorney, and said agreement was fairly and intelligently entered into; that, on said day and prior thereto, said Jacob Hilbish was the owner of the lands described in the complaint, then of the value of $7,000.00, and the one hundred acres described in said agreement, then of the value of $9,000.00, and encumbered to the amount of $4,496.00; and was the owner of other lands in Goshen, Indiana, in Ohio, and Pennsyl-

vania, worth over $22,000.00, besides real estate in Missouri and Kansas; that he was, at said time, indebted in the sum of $10,000.00; that appellant's claim in the said suit then pending, and all the property of the said Jacob Hilbish, as well as his said indebtedness, were considered in making said agreement, and it was estimated and considered by the parties thereto that the said one hundred acres of land described in the agreement was a reasonably fair provision for said Susannah, as the wife of said Jacob Hilbish, at that time; and she dismissed her said suit against him; that on said day, and in pursuance of said agreement, the said Jacob Hilbish conveyed to said Susannah said one hundred acres, by warranty deed, stating therein that said land was conveyed to her "as her own separate property, with full power and authority to sell, convey or encumber the same by her own separate deed and contract, in every respect as though she were unmarried," and "the consideration of the same being a final settlement and adjustment of the property rights between the grantor and the grantee upon the separation this day effected between them;" that the said Jacob Hilbish fully performed all the stipulations of said agreement on his part, except the payment of a small amount of taxes on said land; that the appellant, on said day, and by virtue of said agreement and deed, took possession of the said one hundred acres, and has ever since been in possession thereof, claiming the same as her own; that, on January 28, 1879, the said Jacob Hilbish, by his deed, appellant not joining, conveyed the land described in the complaint for $6,000.00, under which deed, through *mesne* conveyances, appellee claims title to the land, having purchased the same for $7,000.00 and gone into possession; that, on January 10, 1894, appellant executed a power of attorney to one James Hil-

bish, authorizing him to recover for her, her interest as surviving wife or widow in any and all lands owned by the said Jacob Hilbish, this suit being brought February 13, 1895; that the appellee had no notice of the execution of said power of attorney until the summons in this cause was served upon him, other than that before purchasing the land, in 1883, appellant's son informed him that his mother claimed an interest in the land; that at the May term, 1879, of the Elkhart Circuit Court, Jacob Hilbish filed his complaint for divorce, to which said Susannah filed her answer and cross-complaint, which complaint and cross-complaint were both dismissed; that, in the summer of 1879, Jacob Hilbish removed to Daviess county, Missouri, where he resided for five years, then moving to Ohio, where he lived three years, after which he returned to Daviess county, Missouri, where he continued to reside until his death, August 15, 1893; that, on December 31, 1880, Jacob Hilbish filed his petition for a divorce against appellant in Daviess county, Missouri; that, on the 7th day of the February term, 1881, of said court, an interlocutory decree of divorce was granted on said petition; and at the June term, 1881, of said court, "a judgment and decree of divorce was rendered and entered of record by said court, in said cause of *Jacob Hilbish* v. *Susannah Hilbish*, granting the said Jacob Hilbish a divorce from the bonds of matrimony existing between said Jacob Hilbish and Susannah Hilbish, and that said judgment remains in full force."

The full proceedings of the action for divorce in Daviess county, Missouri, are set out in the special findings, as are also the statutes of Missouri in relation thereto.

The conclusions of law made by the court on the special findings of facts were:

"1.   That the plaintiff is not the widow or surviving wife of said Jacob Hilbish, and is not entitled to recover on her complaint.

"2.   That defendant is the owner of the land described in the complaint and cross-complaint, and that his title thereto should be quieted.

"3.   And that defendant should recover of plaintiff his costs."

The errors, assigned on this appeal and discussed by counsel, call in question the correctness of the conclusions of law.

It is first insisted by appellant that, "it is not found by the court that the apparent decree of the Missouri Court is a decree or judgment of any court, nor that it was ever rendered by that or any other court; nor that if such a judgment ever existed, it was still in force at the death of Jacob Hilbish."

We confess that we are unable to understand this contention of counsel.   The proceedings of the Missouri court are, as we have said, set out fully in the findings.   In addition, as we have also shown, the court expressly finds that "a judgment and decree of divorce was rendered and entered of record by said court, in said cause   *   *   *   and that said judgment remains in full force."

Moreover, counsel admit that the setting forth in the findings of the proceedings in the Missouri court, and of the Missouri statutes "indicates that the trial court had evidence before it from which, if not controverted or disproved, it might have found one way or the other on the question."   What further would counsel have?

It is said that the Missouri statute requires an affidavit of non-residence in case of publication of notice to defendants in divorce proceedings, or of serv-

ing such defendants personally, when they are not residents of the State of Missouri, and that it does not appear, from the record, that such affidavit was ever filed. But, in its interlocutory judgment, the Missouri court held that the appellant, defendant in that suit, was "duly summoned as the law directs," while the summons, served in Pennsylvania, with its proof of service, was in fact duly made as required by the statute in case of non-residents. That is quite sufficient to withstand this collateral attack upon the judgment of the Missouri court. Like answer may be made to the objection that it was not shown, in the petition for divorce, that Jacob Hilbish was at the time a resident of Daviess county, Missouri. The court, by its finding and decree, passed also upon that jurisdictional fact, and the same will not here be called in question.

In 1 Black. Judg., section 240, the author, citing *Bumstead* v. *Read*, 31 Barb. 669, says: "Where the judicial tribunal has general jurisdiction of the subject-matter of the controversy or investigation, and the special facts which give it the right to act in a particular case are averred and not controverted, upon notice to all proper parties, jurisdiction is acquired, and cannot be assailed in any collateral proceeding."

In 1 Freeman Judg., section 127, it is said, citing cases: "The position is taken that presumptions of regularity are applicable to proceedings of courts of record, not because of the particular means which those tribunals happen to employ, under the authority of the law, for the purpose of acquiring jurisdiction over the defendant, but because of the high character of the courts themselves; and that this character is essentially the same in all cases, irrespective of the method employed in the service of process. Therefore,

the fact that the affidavit required by law to precede and authorize the order for publication does not appear from the record will not make the judgment vulnerable to collateral attack."

Appellant's authorities only go to show that a defendant brought in by notice of publication only, or by personal service in another state, which is equivalent to notice by publication, cannot suffer a personal judgment. If, however, such notice is given to a nonresident defendant in a divorce proceeding, as is provided by the statutes of the state, the judgment of divorce will be secure against collateral attack. Such judgment acts upon the marriage *status* of the parties; and the court having jurisdiction of the plaintiff has power, after notice given to parties in interest, to determine the *status* of such plaintiff. The court acts by virtue of the citizenship of the party before it. And the marriage relation of the plaintiff being dissolved, the parties are no longer husband and wife.

But it is further contended, by appellant, that even if the decree of divorce rendered by the circuit court of Daviess county, Missouri, should be held valid, still that court, not having acquired jurisdiction over the person or property of appellant, such judgment or decree could not affect any property rights which appellant might have in this State. And section 2660, R. S. 1894 (section 2499, R. S. 1881), that no act of the husband, without his wife's assent, and no disposition of his property "by virtue of any decree, execution or mortgage to which she shall not be a party (except as provided otherwise in this act), shall prejudice or extinguish the right of the wife to her third of his lands or to her jointure, or preclude her from the recovery thereof, if otherwise entitled thereto," is cited in support of such contention. Citing, also, *Grissom* v. *Moore*,

106 Ind. 296; Van Fleet Col. Attack, sections 390, 391, and other authorities there referred to.

But appellant was a party to the decree of divorce, although, being served only with constructive notice, no judgment could be rendered against her. However, by sections 1060, 1061, R. S. 1894 (sections 1048, 1049, R. S. 1881), it is provided that "The divorce of one party shall fully dissolve the marriage contract as to both," and also that "A divorce decreed in any other state, by a court having jurisdiction thereof, shall have full effect in this State." It would seem, therefore, that appellant, not being the surviving wife of Jacob Hilbish, could not, according to the statutes of this State, have any rights in his property by virtue of any marriage relation with him during his life time. *Fletcher* v. *Monroe, ante,* 56. The Missouri court did not attempt any adjudication upon her rights or property in this State. But that court, after jurisdiction duly had, did determine the *status* of her former husband, Jacob Hilbish, and did decree a divorce to him, thus severing the marriage bond that united him to appellant. By force of our statutes, above quoted, it would seem that the same consequences followed that would have followed if the decree had been rendered in this State.

But even if the property rights of the parties were not fixed by the decree of divorce, still, we think, that the post-nuptial contract, shown in the special findings, would be sufficient to support the conclusions of law in favor of appellee. By that contract, the appellant received one hundred acres of land, worth $9,-000.00, as in full of all claims of appellant, present or prospective, upon her husband or his estate, including any inchoate or contingent interest she might have as his surviving wife. This contract was found by the parties at the time to be her fair share of the estate,

taking into account all her husband's property and all his debts. She was, in that negotiation and contract, represented by able counsel, and it would seem that all her rights were fully protected. It is the policy of the law that such just and fair provisions for the wife's support shall be respected and carried into effect. In case of a suit for divorce or alimony, the law requires that such provision shall be made for the wife; and when a voluntary agreement is made, either before or after marriage, if it is, in all respects, fair and adequate in proportion to the husband's property, the contract will be maintained. *Randles* v. *Randles*, 63 Ind. 93.

In *Hollowell* v. *Simonson*, 21 Ind. 398, it was said: "We understand it to be well settled, upon ample authority, that a relinquishment of dower by the wife, the husband being then alive, is a good and valuable consideration for a conveyance by the husband, or procured by him, to the wife, of property which may be considered but a fair equivalent; and that the same will be viewed as valid, or not, as it may be shown to be fair or fraudulent, and the comparative value of the respective estates and interests may be taken into consideration. *Levinz*, 146; *McCann* v. *Letcher*, 8 B. Mon. 326; *Ward* v. *Shallet*, 2 Vesey, Sen. 16; Atherley Marriage Settle., 162."

This statement of the law is quoted and approved in *Brown* v. *Rawlings*, 72 Ind. 505, where it is held that an agreement by a husband to convey certain lands to his wife in consideration that she would relinquish her inchoate interest in his lands, which she did, is valid, even though such agreement is not in writing.

And in *Jarboe* v. *Severin*, 85 Ind. 496, this court said: "The release by a wife of her inchoate interest in her husband's real estate may be a valuable consideration. *Hollowell* v. *Simonson*, *supra*; *Brown* v. *Rawlings*,

*supra.* In *Farwell* v. *Johnston*, 34 Mich. 342, it is said: 'It has always been held that a release by a wife of an interest which was within her option to release or not—as, for example, a right of dower—is a valuable consideration, which will support a postnuptial settlement, and therefore will suffice for any other purpose.'" See also *Copeland* v. *Copeland*, 89 Ind. 29; *Worley* v. *Sipe*, 111 Ind. 238.

In *Dutton* v. *Dutton*, 30 Ind. 452, Chief Justice Ray, speaking for the court, it was said that the following instruction fairly stated the law and should have been given: "That a parol agreement made between husband and wife in view of separation, and fully executed on the part of the husband, wholly for a consideration which, in the light of all the circumstances of the parties at the time the contract is made, is fair, reasonable, and just, the contract will be upheld."

That such a contract between husband and wife, when fair to all parties, will be upheld in equity. See *Sims* v. *Rickets*, 35 Ind. 181; 9 Am. and Eng. Ency. of Law, 792; 14 Am. and Eng. Ency. of Law, 552, and authorities cited in notes.

The contract, in the case at bar, was found by the court to have been made in view of all the property of Jacob Hilbish, and that "it was estimated and considered by the parties thereto that said one hundred acres of land, described in said agreement, was a reasonably fair provision for said Susannah, as the wife of said Jacob Hilbish, at that time."

The contract was in writing, made with the advice of eminent counsel, was "in view of separation," was "fair to all the parties," was received by her in full of all demands against him, and, "in full of her inchoate rights or contingent rights in his property as his wife or his widow." The contract has never been rescinded; she still holds the land conveyed to her by virtue of

the terms of the contract. She has made no election, as provided in section 2665, R. S. 1894 (section 2504, R. S. 1881), even if this were a jointure for her use, and such election might be made.

We see, therefore, no reason why this contract and deed of settlement should not be upheld, without considering the question, if any there be, as to the effect upon appellant's rights of the decree of divorce, granted to her husband in Daviess county, Missouri. The second and third conclusions of law, being in favor of appellee, were clearly correct, and quite sufficient to sustain the judgment of the court.

"If the ultimate judgment deals justly with the parties, gives to each his legal rights, and is sustained by the facts appearing in the special finding, an error in one of the conclusions of law will not justify a reversal." *Slauter* v. *Favorite*, 107 Ind. 291; *Waters* v. *Lyon*, 141 Ind. 170.

Judgment affirmed.