THE METROPOLITAN BANK OF ST. LOUIS, Appellant, *vs.* WILLIAM F. TAYLOR, LUCY G. TAYLOR, and CHARLES BOBB, Respondents.

1. *Husband and wife—Separate estate—What words create.*—Where by deed, or by decree of a court of equity, property is conveyed to a trustee "for the sole, separate and exclusive use, benefit and behoof" of certain parties, some of whom were unmarried females, such deed or decree creates a separate estate in such females, free from the control of any future husbands.

2. *Husband and wife—Separate estate—How charged.*—The separate estate of a married woman is liable for notes executed by her.

PER SHERWOOD, JUDGE, DISSENTING.

1. *Husband and wife—Separate estate—Deed, language of—*In order to exclude the *jus mariti* in an estate conveyed to a woman, the expression in the deed of the intention to do this must be clear and unequivocal.

2. *Husband and wife—Separate estate—Deed, language of—Decree, reforming deed—Petition, uncontradicted allegations of.*—Property was conveyed to A. in trust for his wife B., and their children, C., D. and E., the said *cestuis qui trust* were to have, hold and enjoy the same, with all the rights, improvements, &c., separate from said A., "their respective husband and father, as their sole, individual and exclusive property;" and the rents, profits and moneys accruing from the disposition of the property, or any part thereof, the said trustee was to pay over to the *cestuis qui trust*, or their order. Afterwards a petition was filed to correct the deed [B. was dead], and give the trustee greater power of sale, which error in the deed was alleged to be the fault of the scrivener, and to let in children subsequently born. The deed was corrected by the court. In the petition, whose allegations were not denied, C. and D. were alleged to have been under ten years of age, and E. only six months old, at the date of the deed. *Held,* that the deed, the decree, and the undenied allegations of the petition must be construed together, and that the husband of E. is not excluded from his marital rights in the interest of E. in this property.

### *Appeal from St. Louis Circuit Court.*

*F. K. Ryan, with Daniel Dillon,* for Appellant.

I. It is immaterial what the language of the deed, as at first drawn, was, but all the parties must be governed by the deed as amended by the decree.

The words "sole and separate" are recognized by the law as expressly indicating the intention of the parties to exclude marital rights. (Wills *vs.* Sayers, 4 Madd. Ch. R., 216; Clancy on Rights, 263; 2 Story Eq. Juris., § 1382; Nix *vs.* Bradley, 6 Rich. Eq., 43; Goodrum *vs.* Goodrum, 8 Iredell Eq., 213.)

II. A separate estate may be created in a *feme sole* in like manner as in a *femme covert*. (Tullett vs. Armstrong, 4 Mylne & C., 376; Scarborough vs. Dorman, *Id.*, 377; Newland vs Paynter, *Id.*, 408; 2 Spence Eq., 524; 2 Bright, Husb. and Wife, 205; 2 Story Eq. Jur., 1384; Beaufort's Adm. vs. Collier, 6 Humph, 487; Phillips vs. Grayson, 23 Ark., 769; Schafroth vs Ambs, 46 Mo., 114; *Id.*, 580.)

III. There is no distinction as to the language to be used in creating a separate estate in a *femme sole*, and in creating such an estate in a *femme covert*. (——— vs. Lyne, 1 Younge, 562; Davis vs. Prout, 7 Beav., 288; Adamson vs. Armitage, 19 Ves. Jr., 416; Darkin vs. Darkin, 23 Eng. Law and Eq., 593; Snyder vs. Snyder, 10 Barr, 423; Fears vs. Brooks, 12 Ga., 195; Schafroth vs. Ambs, 46 Mo., 114.)

IV. A separate estate may be created in several by the same instrument; and a separate estate may be created in some of the beneficiaries mentioned in an instrument, and not in others, where the same language is used with reference to all. (Nix vs. Bradley, 6 Rich. Eq., 43; Anderson vs. Brooks, 11 Ala., 953; Bridges vs. Wilkins, 3 Jones Eq., 343; Thrash vs. Hardy, 31 Ga., 203.)

*C. C. Whittelsey*, for Respondents.

I. There is no such thing as a separate estate in a male. The law knows of no such estate, and yet to give Lucy G. a separate estate requires a different constitution to the same words which are applied to the estates given to her brothers. The brothers took an equitable estate in fee, and a fair construction requires, that the sister should take a similar estate, for the same words are applied to all in the same sentence.

II. A separate estate may be given to become separate upon the marriage of a *feme sole*, but it must appear from the deed or devise, that it was the intention of the donor or devisor to provide against the consequences of future marriage. (Benson vs. Benson, 6 Sim., 126; Knight vs. Knight, 6 Sim., 121; In re Gaffe, 1 McN. & Gord., 541; Scarborough vs. Borman, 1 Beav., 34; S. C. on Appeal, 4 Mylne & Cr., 378.)

Tullett vs. Armstrong, 4 Myl. & Cr., 377, discusses all the preceding cases and overrules Massey vs. Parker, 2 Myl. & Keen, 174. The cases all seem to turn on giving estates for life and forbidding anticipation. (Scarborough vs. Borman, 1 Beav., 34; S. C., 4 Myl. & Cr., 378.)

III. The intention of the grantor in the deed is manifest to give Mary H. Bobb, who was a married woman, a separate estate, but it was not intended to give Lucy G. a separate estate when she should thereafter marry. (Hawkes vs. Hubback, 11 Law R., (Eq. Cas.) 5 ; Evans vs. Knorr, 4 Rawle, 66; Stoebler vs. Ruerr, 5 Watts, 181 ; Hulme vs. Tenant, 1 Wh. & Tud. L. C. Eq., 394; Hill on Trustees, 419.)

ADAMS, Judge, delivered the opinion of the court.

The defendants, Wm. F. Taylor and Lucy G. Taylor, are husband and wife.

The wife joined with her husband in the execution of a promissory note for $1,900, which is held by the plaintiff.

This suit was brought to subject to the payment of this note the interest of the wife in certain real estate situated in St. Louis, the legal title to which is vested in the defendant, Charles Bobb, as trustee for her and others.

The material question is, whether the interest of Mrs. Lucy G. Taylor is held by the trustee for her sole and separate use, so that she could in equity bind it for the payment of the note executed by herself and husband.

Mrs. Lucy G. Taylor was formerly Lucy G. Bobb, one of the children of the defendant, Chas. Bobb, and his wife, Mary H. Bobb, and one of the beneficiaries in the deed of settlement hereinafter referred to.

On the 23d day of January, 1845, Hannah Letcher, who afterwards married John D. Stevenson, executed a deed of settlement, whereby she conveyed in fee to the defendant, Charles Bobb, as trustee, the real estate sought to be charged with the payment of the note referred to. The language of this deed declaring the trust is as follows :

" To have and to hold the same, with the rights, privileges, and appurtenances thereto belonging, unto him, the said

Charles Bobb, and to his heirs and assigns forever. In trust however, for the sole use, benefit and behoof of Mary H. Bobb (wife of said Charles Bobb), and of Charles L. Bobb, John H. Bobb and Lucy G. Bobb, children of said Charles Bobb, and to their heirs, executors, administrators and assigns forever. That they may have, hold and enjoy the same, with all the rights, improvements, buildings, &c., separate from said Charles Bobb, their respective husband and father, as their own sole, individual and exclusive property ; and the said Charles Bobb of the second part, trustee as aforesaid, shall hold said property for the sole benefit of the said Mary H. Bobb, wife of the said Charles Bobb, and Charles L. Bobb, John H. Bobb, Lucy G. Bobb, and to their heirs, and shall obey their written instructions in all things relating to said property ; shall rent, lease, mortgage, sell or dispose of the same, or any part thereof, for such consideration, to such person or persons, and in such manner as they, the said Mary H. Bobb, Charles L. Bobb, John H. Bobb and Lucy G. Bobb, their heirs or assigns, shall direct in writing ; and the rents, profits and moneys accruing from such disposition of said property, or any part thereof, he shall pay over to said Mary H. Bobb, Charles L. Bobb, John H. Bobb and Lucy G. Bobb, or their order ; and generally and in all things the said trustee and his heirs and assigns shall faithfully, according to the true intent and meaning hereof, discharge the trust herein created." At the time this deed of settlement was made, Lucy G. Bobb was the youngest child of Mary H. Bobb, and only six months old.

In the year 1853 Mary H. Bobb died, leaving as her only heirs-at-law the children mentioned in the deed of settlement, and two others subsequently born, Cora Bobb and George Bobb.

After the death of Mary H. Bobb, it was ascertained, that there had been a mistake made by the draughtsman in writing the deed of settlement, in not authorizing the sale and disposition of the property without the written consent of the beneficiaries. To correct this mistake, and effect a resettlement

of the property, the trustee, Charles Bobb, brought a suit in equity in the St. Louis Land Court, in the year 1854, joining the surviving beneficiaries, and Cora and George Bobb, subsequently born, children and heirs of Mary H. Bobb, as plaintiffs in such suit against Hannah Stevenson, formerly Hannah Letcher, and her husband, John D. Stevenson.

The petition filed in the Land Court assumes, that it was the intention of the deed of settlement to convey the land in dispute to Charles Bobb, as trustee, "for the sole, separate and exclusive use, benefit and behoof of the said Mary H., Charles L., John A., and Lucy G. Bobb, their heirs and assigns, forever," &c.

The prayer of the petition asks for a judgment reforming the deed so as to carry out the object and intention of the parties who executed the same: "That the said trustees shall forever hold the said real estate for the sole, separate and exclusive use, benefit and behoof of said parties, who are entitled to the equitable interest as aforesaid, their heirs and assigns, with power in said trustee," etc., and the "moneys or proceeds arising from any sale or disposition of the same, or any part thereof, to be paid over or held by the said Charles Bobb for the sole, separate and exclusive use and benefit of said parties as aforesaid holding or entitled to the equitable interest as aforesaid."

The Land Court rendered a judgment in conformity to the prayer of the petition. The substantial part of the judgment is in the following language :

" That said deed be reformed, and that said mistake in said deed be corrected as asked for in said plaintiff's petition, so as to carry out and accomplish the said object and intention of the said parties who executed the said deed as stated in said petition ; that the title in fee simple of the said real estate be vested in the said Charles Bobb, the father of said minors, and forever held by him and his heirs, for the sole, separate and exclusive use, benefit and behoof of the said Charles L. Bobb, John H. Bobb, Lucy G. Bobb, Cora Bobb and George Bobb, their heirs and assigns, according to the

said deed as aforesaid, with full power and authority, however in the said Charles Bobb, trustee as aforesaid, to rent, lease, mortgage, sell or dispose of the said real estate, or any part thereof, for such consideration, to such person or persons, and in such manner as he, the said Charles Bobb, trustee as aforesaid, may deem best for the interest of the said parties entitled to the equitable interest in said real estate as aforesaid; and with full power and authority in the said Charles Bobb to execute and deliver such deeds and assurances, so as to pass and convey the same in fee simple; and all rents and profits arising from the same, and moneys and proceeds arising from any sale or disposition of said real estate, or any part thereof, shall be paid over or held by the said Charles Bobb for the sole, separate and exclusive use and benefit of the said parties entitled to the equitable interest as aforesaid."

At common law the wife was not allowed to hold property separate from her husband. For most purposes they were considered as but one person—the individuality of the wife being swallowed up in that of her husband. On the other hand, courts of equity, following the doctrines of the civil law, have for a great length of time admitted, that a married woman is capable of taking and holding real or personal estate for her sole and separate use, with the incidental power of disposition. And this doctrine has gradually grown up, and is now firmly established, that in regard to her separate property a married woman must be treated in almost every respect as a *feme sole*.

The only question is, under what circumstances property settled on a married woman will be deemed a trust for her sole and exclusive use.

The solution of this question depends upon the intention of the donor, to be gathered from the deed of settlement, or if it be by the decree of a court, from the terms of such decree creating the trust in her favor.

Although it is a matter which, upon the authorities, involves some nice distinctions, it may be laid down as a rule

of universal acceptance, when from the terms of the document creating the trust the property is expressly or by necessary implication designed to be for her sole and exclusive use, the rights of the wife will be fully recognized and sedulously protected in equity.

The question, however, still remains: What words are sufficiently expressive of such purpose, for the purpose must clearly appear, beyond any reasonable doubt, otherwise the husband will retain his ordinary marital rights.

Some words and phrases have been so often used in marriage settlements, and so frequently passed upon by the courts, that they have acquired a significance, which makes them rules of property in the interpretation of such instruments, and the courts are bound, when such words or phrases appear, to conclude the intent to be to exclude all the marital rights of the husband.

Judge Story, in his work on Equity Jurisprudence, says: "On the one hand, if the language of a marriage settlement made before marriage, or of a gift or bequest to a married woman after marriage, be that she is to have the property 'to her sole use or disposal,' or 'to her separate use or disposal,' or 'to her sole use and benefit,' or 'for her own use and at her own disposal,' or 'to her own use during her life independent of her husband,' or 'that she shall enjoy and receive the issues and profits,' or 'that it is an allowance as for pin-money,' (*e o nomine*); in all these cases the marital rights of the husband will be excluded and the property will be for her exclusive use.   *   *   *   *   *   *   * So a bequest to a married woman and her infant daughter, to be equally divided between them, share and share alike, 'for their own use and benefit, independent of any other person,' will be construed to mean 'for their sole and separate use.' So a bequest to a married woman, 'for her benefit, independent of the control of her husband,' will receive the like construction. In all these cases the words manifest an unequivocal intent to exclude the power and marital rights of the husband." (2 Story's Eq., § 1382.)

· A distinction was formerly taken between settlements on married and unmarried women. It was at one time held in England, that property could not be secured to the separate use of a *feme sole*, so as to exclude the marital rights of a future husband. But this distinction has long since been exploded. If the intention appears in the deed of settlement to exclude marital rights, the husband must take the property as he finds it, protected from any invasion by him, and subject to the separate control of his wife. (2 Story's Eq., § 1384, and authorities there cited.)

From the doctrines there laid down it is plain to my mind that the language used in the deed of settlement, not only created a separate estate in Mrs. Mary H. Bobb, but also in her then infant daughter, Lucy G. Bobb.

The phrase used is precisely the same as some of those quoted from Judge Story, which have become rules of property in the creation of separate estates for married women. It can make no difference, that the same language was applied to the males. So far as the males are concerned it can have no meaning, as their individuality remains whether married or unmarried. But when applied to Lucy G. Bobb, as it was, it created a separate trust in her behalf in anticipation, and protected her interest from the marital rights of her future husband, Wm. F. Taylor.

It seems that this was the understanding of all the parties to the deed of settlement, for after the death of Mrs. Mary H. Bobb, when application was made to the Land Court, as a court of equity, to reform the deed and to have the property re-settled by a decree of that court, the petition declares, that the intention was to settle the property on Lucy G. Bobb, for her sole and separate use, and the petition asks for a decree so as to vest the title in the trustee for the sole, separate and exclusive use and behoof of the parties entitled to the equitable interest in the same. This decree was accordingly made, and the language used, beyond any doubt, created a separate trust in the defendant, Lucy G. Taylor.

The court had complete jurisdiction over the persons and

property in question, and it is no matter whether the primary object was to create a separate estate, or to modify the deed in other respects. It is sufficient, that the court acted in the premises, and entered a decree which remains in full force, whereby a separate estate was secured to the female beneficiaries. So, whether we look to the deed of settlement, or to the decree made long after the death of Mrs. Mary H. Bobb, the conclusion is inevitable, that the interest of the defendant, Mrs. Lucy G. Taylor, in this real estate, is secured to her for her sole and separate use. And as she thus had the exclusive control of her property when she executed the note held by the plaintiff, she thereby bound it for its payment.

In my opinion the judgment of the Circuit Court, which was for the defendants, ought to be reversed, and the cause remanded.

Reversed and remanded. Judges Vories and Wagner concur; Judge Sherwood dissents, and Judge Napton did not sit.

Dissenting opinion of Judge SHERWOOD.

This was a proceeding in the nature of a bill in chancery, instituted in the Circuit Court of St. Louis county by the Metropolitan Bank, to subject certain real estate to the payment of a certain promissory note executed by defendants, William F. Taylor and Lucy G., his wife, to one Joseph Geitner, and by him transferred to the bank; and it was claimed in the petition in the cause, that a certain undivided interest in said real estate was the separate estate of the wife, Lucy G., and therefore was charged with the payment of the debt specified in the note executed by herself and husband.

Charles Bobb, the father of Mrs. Taylor, and the trustee in whom the title of the real estate was vested, was also made party defendant to the suit.

On the hearing of the cause, the deed, which conveyed the property above referred to, was read in evidence, from which it appeared, that Hannah Letcher had in the year 1845 con-

veyed said real estate to said Charles Bobb, (her son-in-law) "In trust however for the sole use, benefit and behoof of Mary H. Bobb, (wife of said Charles Bobb,) and of Charles L. Bobb, John H. Bobb and Lucy G. Bobb, children of said Charles Bobb, and to their heirs, executors, administrators and assigns forever; that they may have, hold and enjoy the same with all the rights, improvements, buildings, &c., separate from the said Charles Bobb, their respective husband and father, as their own, sole, individual and exclusive property. And the said Charles Bobb of the second part, trustee as aforesaid, shall hold said property for the sole benefit of the said Mary H. Bobb, wife of the said Charles Bobb, and Charles L. Bobb, John H. Bobb, Lucy G. Bobb, and to their heirs, and shall obey their written instructions in all things relating to said property; shall rent, lease, mortgage, sell or dispose of the same, or any part thereof, for such consideration, to such person or persons, and in such manner, as they, the said Mary H. Bobb, Charles L. Bobb, John H. Bobb, and Lucy G. Bobb, their heirs or assigns, shall direct in writing, and the rents, profits and moneys accruing from such disposition of said property, or any part thereof, he shall pay over to said Mary H. Bobb, Charles L. Bobb, John H. Bobb and Lucy G. Bobb, or their order; and generally, and in all things, the said trustee, and his heirs and assigns, shall faithfully, according to the true intent and meaning hereof, discharge the trust herein created."

This deed, which was signed and acknowledged by both the grantor and the trustee, afterwards, (in 1854, the wife, Mary H. Bobb, having died the preceding year,) was so far reformed by a decree of the Land Court of St. Louis county, (which decree and accompanying papers were also read in evidence,) as to obviate the necessity of written instructions and directions from the beneficiaries, who were then minors, prior to a sale or other disposition of the property in question by the trustee, and to permit him to proceed in all respects as if no such clause making written instructions had ever been contained in the deed of trust. This was the only

change of any practical importance, which the decree purports to effect. It was admitted in evidence, that at the time of the execution of the deed from Hannah Letcher to Charles Bobb, that Lucy G. Taylor, wife of her co-defendant, William F. Taylor, was an infant six months old. This was all the evidence. Whereupon the court found for defendants, and after motion for new trial being overruled, and exceptions taken, this case comes here by appeal.

There is only one question in this case, and that is, whether the deed from Hannah Letcher to Charles Bobb, as it was originally drafted, or as subsequently reformed, created a separate estate as to Lucy G. Taylor's interest in the property conveyed. For although it was at one time held, that a separate estate could only be vested in a *feme sole*, as against a named or contemplated husband, and that such settlements upon single women, to the exclusion of the right of some future, but unknown husband, were inoperative; yet that doctrine was effectually exploded in Tullett vs. Armstrong, and Scarborough vs. Borman, 4 Myl. & Cr., 377, by Lord Cottenham, who, as master of the rolls, had decided the case of Massey vs. Parker, 2 M. & K., 174, the strongest of the cases, in which was enunciated the adoption of the ruling first above mentioned. The new principle then asserted in those cases of Tullett vs. Armstrong, and Scarborough vs Borman, *supra*, was distinctly this:

That no matter when property was vested in a woman for her separate use, whether she were single or married, that such property would shift with her condition; be at her disposal when single or discovert, and come anew into operation and vigor, when marital relations were entered into. And that ruling, it would seem, has been adhered to, both in England and in this county. (Sto. Eq. Jurisp., § 1384; Newlands vs. Paynter, 4 Myl. & Cr., 408; Hawks vs. Hubback, 11 Law R., (Eq. Cas.,) 5.)

In determining whether a separate estate, as to any of the *cestui que trusts* other than the mother, was intended to be created by the deed from Hannah Letcher to Charles Bobb,

that instrument must necessarily be considered in connection with the decree and with the petition, whose undenied allegations furnished the basis for, and gave rise to, the decree. In making this examination, effort must be made to discover, if possible, the controlling words in the deed, those which most strongly indicate the intention of the grantor, and then to ascertain, by a like scrutiny of the decree and its accompanying petition, whether any change, materially affecting the character or extent of the real estate, was effected by the decree; and the circumstances surrounding the execution of the deed should not be altogether overlooked, nor the parties who were to be benefited by that instrument—a mother and three small children, two boys, the eldest not over ten years of age, and the youngest child, a girl, (now Mrs. Taylor,) only six months old.

With matters then in this situation, the deed is made, the controlling words of which evidently are " That they (referring to the wife and children) may have, hold and enjoy the same, (referring to the property granted,) with all the rights, improvements, buildings, &c., separate from the said Charles Bobb, their respective husband and father, as their own, sole, individual and exclusive property."

This clause, I am confident, discloses the very gist of the grantor's intention, and sets up restrictions as to any rights, which Charles Bobb, "their respective husband and father," might otherwise have acquired; but raises no such barrier as against any one else whatever.

It is true that no technical words are necessary to the creation of a separate estate, but all the authorities agree, that the expression of the intention to do this must be clear and unequivocal.   Judge Story (Story Eq. Jur., § 1381,) on this point says: "For the purpose must clearly appear beyond any reasonable doubt; otherwise the husband will retain his ordinary legal and marital rights over it," (the property.)  In Rudisell vs. Wotson, 3 Dev. Eq., 430, in considering the effect of a bequest to a married daughter in these words, " to her and her heirs" proper use, C. J. Ruffin, speaking with regard

to whether this expression raised a separate use, says: "I am not sure that was not the meaning of the testator. I incline to think it was; but I am not sure it was. I conjecture so, because if he, (the testator) did not mean an absolute gift in the ordinary way, that is the next and most natural thing we could expect him to mean. But it will not do to guess. The husband cannot be excluded without plain recorded words or necessary implication. *  *  *  *  * Upon the whole therefore, although I think it more than probable, that the testator meant to exclude the husband, I am constrained to decide in favor of his right, because the conclusion is not manifest." In Ashcraft vs. Little, 4 Ired., 236, after citing with approval the decision in the case of Rudisell vs. Watson, the court, in passing upon the effect of a deed of gift to a married woman and her two sons, where the restrictive words used were, "But the said gift to extend to no other person," held that these words did not create a separate estate in the wife, especially as they extended equally to the gift to the sons, and after citing a number of authorities say: "These cases abundantly show, that to exclude the husband the intention of the settler must be clear, certain and unequivocally declared. This certainty, it is said, exists in this case by force of the words, "but the said gift to extend to no other person." Taken by themselves they might have that effect; but coupled as they are with others preceding them, we do not think so." And in speaking further of the intention of the donor in that case, the court say: "The husband cannot be deprived of his marital rights by conjecture however strong. There must be a certainty to that degree which shows, that the donor must have so meant, and could not have meant otherwise."

In Brown vs. Clark, (3 Ves., 166,) where the testator had devised to his brother and sister, Mary Brown, certain sums of money, the interest to be equally divided between them, "the principal to be lodged in bank or some other secure place; at the death of my sister, Mary Brown, then one-half of the principal to be equally divided between her children; the husband

Metropolitan Bank of St. Louis v. Taylor, et al.

of the said Mary Brown by no means to have any part what-ever, but to be entirely for the poor children," it was contended, that those words created a separate estate in the wife as to her portion of the interest; but the court remarked upon that point, "It is said the words must mean that the husband shall have no part whatsoever of the interest before given; otherwise they are unnecessary and superfluous. That is admitted; but it is no uncommon thing for the testator to suppose, that the father would have the fingering of the money given to the children, and it might be inserted to prevent that." And accordingly, there was a refusal by the court to declare that Mary Brown had a separate estate as to the interest on the money.

These cases, and a great number of others of like sort, abundantly show, that the courts will not suffer the marital rights of the husband under the common law to the property of his wife, whom he is bound to support, to be defeated by inferences or conjectures; that this doctrine of a woman's separate estate, being a complete innovation on the common law, should not be given the loose rein of an unguarded interpretation, but should be curbed by just and reasonable restrictions. Otherwise an innovation, once established, would soon become the prolific progenitor of a countless offspring.

And the courts do but hold the same views with regard to the particular innovation under consideration, that they do towards similar departures from legal rules; as for instance, cases involving the doctrine of resulting trusts, or that of part performance.

For the natural tendency of all these innovations, like that of breaches, is to widen; and therefore the most cogent reasons arise to curb them within due bounds.

Mr. Hill, in his work on Trustees, (p. 421,) lays down the doctrine without any qualification, that "The trust must be for the benefit of the wife, exclusive of any other person; and a gift for the benefit of the children, as well as the wife, has been held not to create a trust for her separate use; although the terms of the gift would otherwise have been inopera-

tive." But the authorities, cited in the note in support of the text, would hardly seem to support the latter in all its broadness—though certainly having a bearing that way.

The circumstance however, that the mother is included with the children in the same gift, should not be without its due weight in determining, whether general words, which were clearly and immediately applicable as against " their respective husband and father," should be so extended as to operate to the exclusion of the *jus mariti* of the husband of her, who at the time the gift took effect was only a six months' infant.

That the donor intended to exclude the husband and father is manifest; that she so intended as to any other person is by no means " clear " nor " unequivocal." And the meaning of the deed of gift still remains as when drafted, unless an alteration therein was effected by reason of the decree, whose effect thereupon will now be considered.

And as before said, the petition is to be viewed in connection with the decree. It will be observed from the language of the petition, that Mary H. Bobb, the mother, was dead ; that she left two children in addition to those who were named in the deed ; that all the children were still minors, and the trustee, being desirous of selling one of the pieces of the donated property, " obtained legal advice to the effect, that as the said children of said Charles Bobb, the parties holding the equitable interest aforesaid, were minors under the age of twenty-one years, they could not legally give their written consent to sell the said lot of ground, so as to pass and convey the title in and by virtue of said deed drawn as aforesaid, and said plaintiffs aver, that the said scrivener made the said mistake, (alluding to the mistake made by the draughtsman, in inserting written instructions from the donees as necessary before the trustee could convey,) in drawing the said deed as aforesaid ; and the said plaintiffs wish and are desirous, that the said real estate should be managed or disposed of in the way and manner which will be to their best interest and advantage, and that the original and avowed intention and under-

standing, as hereinbefore stated, of the said parties, who executed the said deed as aforesaid, should be carried out and fulfilled. They now apply for the aid of said court to reform the said deed, as aforesaid, so as to carry out and accomplish the said avowed intention, object and' understanding of the said parties as aforesaid, &c." "The avowed object and intent" of the donor, as appears from the petition, was to convey the property precisely as it was conveyed, with the single exception, that no restrictions were to be placed on the trustee's power of disposition. The blunder of the scrivener in that sole respect was the whole " head and front of his offending," and the only ground of the petitioners' complaint.

It is true, that some loose language is employed in the petition and decree, but it must all be construed with reference to the point in hand, to the gravamen of the relief sought; and this is more especially the case, as the decree sets forth with precision the particular mistake referred to, and then says: " The court doth therefore order, adjudge and decree, that said deed be reformed, and that said mistake in said deed be corrected, as asked for in said plaintiffs' petition." Conceding then, (for the sake of argument, and my remarks in that' regard are to be taken in that light) that the decree could have accomplished all that appellant claims it did, still I do not see how any different result, than the one already indicated, would follow; for no change is sought to be wrought but in the single particular I have mentioned, leaving the *status* of the parties to the deed otherwise untouched.

If Mrs. Bobb had remained alive at the time the reformation of the deed was attempted, is there anything in either the petition or decree, or circumstances of the parties, to show that that movement would not have been made? Not at all. The same necessity for " written instructions " from the children in order to part with their interests would still have existed—and as a matter of course, the same reason for obviating that necessity would still have existed.

Had the mother remained alive, she would only have been ι mere formal party to the decree, for so far as her interests

were concerned, there is no doubt but her power of appointment would have been effective.

This also goes to show, in addition to what has already been said, that no modification of the deed was attempted, except as to restrictions thrown around the trustee's power of disposal.

But even if you take the decree just as it is, with all its surplusage, it makes no stronger case than that of Ashcraft vs. Little, *supra;* as the decree in this case, like the deed of gift in that, extends to the sons as well as to the daughter.

Whether then we regard the circumstances surrounding the parties at the time the deed was made, the language of the deed, its evident and clearly expressed intention, as contradistinguished from a meaning based on inferences or conjectures, or whether the very words of the decree are to govern, I can only come to the conclusion, that so far as the daughter,. Mrs. Taylor, was concerned, no separate estate was designed to be created by the deed, or was established by the decree. And it may not be improper to add, that, at the last March term of this court, the late Judge Ewing fully concurred in this opinion. I am for affirming the judgment.