Ashburn, J.
There are several questions to be considered. Chief among them are:
1. The exclusion of certain proposed testimony.
2. The liability of the insurance company for the fraudulent acts of its sub-agent, Goodwin.
3. The right of the company to have a rescission of the •contract of insurance.
1. Eirst as to the exclusion of testimony.
On the trial, Price, the president of the company, was introduced as a witness on behalf of the company. Six of ■the questions asked him were objected to and excluded. Three of the questions asked Smith, the examining surgeon •of the company, were also excluded.
*655 Price was asked,
“ Does your company insure more than one class of lives, •and has it more than one set of rates ? ”
“ Please produce and attach to your deposition a list of your company’s rates for 1868.”
These questions were properly rejected. The testimony desired to be elicited by them, was pertinent to no issue in' ■the case. The company claimed in argument, that, the premium list would tend to show the company had no knowledge that Betz had made an application differing from the one forwarded to the home office; that he was a party to, or connived at the fraud, and rebut the supposed equitable estoppel. We do not-see how the rates could, in any proper way, have such effect. There is no testimony proving, that by the laws of Massachusetts, its charter, bylaws, or regulations, the company was restricted to the insurance of a particular class of lives; that it could have but one rate, nor that Betz had knowledge ftiat the company was, in any way, restricted to the insuring of sound lives and no others. We think the testimony was properly rejected.
The testimony sought by four other questions put to Price, and the three asked Smith, was objectionable. The questions were of this character:
“ State to what extent during the last twenty years you have been engaged in the insurability of lives, and the questions relating to the business of life insurance.”
“ Please state whether or not the application of Leonard Betz would have been approved and a policy issued upon it, if it had disclosed the fact that Betz had the consumption, or the asthma, bronchitis or scrofula, or had spitting of blood or chronic cough from throat affection.”
“ State whether or not, if the application of Leonard Betz had disclosed that he was afflicted with either of the diseases mentioned in the last two questions, it would have been approved by you, as medical examiner of the company, of whether you would have recommended the issuing of a policy thereon.”
*656 The issues in the case, were clearly issues of fact to be-determined by established facts' and the natural presumptions arising from them. No testimony was introduced on the trial, requiring the testimony of experts. If the testimony was inadmissible as the opinion of that class of witnesses, we recognize no legal principle within the scope of which the proposed testimony could be admissible. In-cases involving questions of science, skill, trade, and matters of that kind, persons of learning and skill, in the particular department, are allowed to give opinions. This rule,, however, is confined mostly to cases, in which, from the very nature of the case, the facts, disconnected from such opinions, can not be so clearly presented to the jury, as to enable them to pass upon the question with the requisite knowledge, and informed judgment. We find no question in this case with such conditions; nor other conditions that render the proposed testimony competent. 5 Barn. & Adol. 840 ; 7 Wend. 72; 1 Greenliefs Evidence, paragraph 441.
2. Is the company liable for the acts of its agent, Goodwin, done within the scope of his employment? And was Ms knowledge of the condition of the life insured notice to the company of that condition?
That Goodwin was its agent is not distinctly admitted by the company. That, he was a sub-agent, appointed by the general agent of the company for Northern Ohio, with authority to solicit and to take applications for and in the ■ name of the defendant, is clearly shown by the proofs in the case. It was within the scope of Ms employment not only to take applications for insurance, but to receive the-premium money, premium notes, and give receipts therefor, in the name of the company, for which it allowed and paid him a compensation of twenty-five per cent, on the money and notes taken by him. The work done by Goodwin in the course of his employment* the acceptance of such work, and the policies issued on the applications taken by)him, clearly show an acceptance of Mm by the company as its agent.
We do not understand defendant below, as controverting; *657 the general rule, that the knowledge of the agent is the knowledge of the principal, but as denying the application of the rule to this case; and claiming that, if Goodwin, while acting as the soliciting agent of the company, forged an application in the name of Betz, such act was beyond and outside the scope of his employment, and hence the company is not bound to make1 good the policy, the fruit of the fraud of its agent.
We think this view of the ease not sound, and will endeavor to determine what, in cases like this, is the true relation of principal and agent, and extent'of the principal’s-liability.
Where a general agent, in the due prosecution of the-business of his principal, employs a sub-agent to discharge-the duties of a branch of the business, the acts of the sub-agent, or notice coming to him in the due course of his-employment, have the same effect as if done, or received by the principal. 1 Otto, 310, and cases cited; 10 Eoster, 245. In such case the sub-agent becomes the agent arid direct representative of the principal. 2 Phil, on Insurance, ¿>23. Insurance corporations act and speak only by and through agents, so that the principle, that the knowledge-of the agent is notice to the employer, applies to corporations as well as to individuals. 53 Penn. St. 353.
In 4 Paige, the Chancellor, in speaking on this subject at-pa-ge 137, says : “ It is well settled that notice to an agent of a party, whose duty it is, as such agent, to act upon the-notice or communicate the information to. his principal, in the proper discharge of his trust as such agent, is legal, notice to Ms principal.” See also 53 Mo. 456; 31 Conn. 517; Bliss on Life Ins. 105 ; Story on Agency, par. 53 b, etc.
Many foreign life insurance companies have established, agencies in this state, having general and sub-agents in great number soliciting patronage from the people. Such corporations must not be surprised if they are held to strict accountability for the conduct of their agents here while *658 ■■acting in. what appears to be the scope of their employment.
Story on Agency, as the results of the authorities, in sec. 452, says the principal “is held liable to third persons in a •civil suit for' the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances, or misfeasances, and omissions of duty of his agent in the course of his employment, although the principal did not authorize, or justify, or participate in, or indeed know of .•such misconduct, or even forbade the act, or disapproved ■of them.”
Defendant says : My agent was not authorized, in taking .applications for insurance, to perpetrate a fraud upon his principal, and hence he was not acting within the scope of his authority or employment, and I am not legally liable for any ■evil cousequences arising from his fraudulent acts. If the fraudulent act was within the apparent limits of the agent’s employment, although not within the actual authority conferred upon him, the principal will be liable. The company did not authorize Goodwin to do the wrong, but it accredited him as its trusted agent, and invited the public to trusj and confide in his acts in relation to a branch of its business. So long as the agent is transacting that branch of the business intrusted to him by his employer, and within its apparent scope, the law will hold the principal liable for his acts, and charge it with his knowledge, whether the fraud is upon itself or third persons, to the extent the tort < affects third persons.
The wrong done by the servant is regarded in law as the wrong of the master. And it is settled that no one shall be allowed -to take advantage of his own wrong, 1 Black. Com. 431, 4 D. & E. 39. This legal unity of principal and agent, in respect to the wrongful, or tortious, as well as the rightful acts of the agent, is an incident which the law wisely attached to the relation from its earliest history. 40 Miss. 453. The rule is founded in public policy, the just responsibilities of persons or corporations acting through agents, and the needs of society. This is to secure *659 .and insure safety to third persons in their dealings, either ■directly with the principal, or indirectly with him through the instrumentality of agents. In every such case the principal holds out his ageut as competent, honest, faitlifulj and fit to be trusted, and thereby, in effect, warrants his fidelity and good conduct in all matters within the limits of his agency. He engages to abide by and discharge the •obligations arising from his agent’s acts and judgment, when traced to his employment.
In the ease of The New York Life Ins. Co. v. McGowen, decided by the Supreme Court of Kansas at its January term, 1877, it was held, “An insurance company is liable to a third person, in a civil action, for the frauds, deceits, and misrepresentations of its general agent, when the acts so committed are apparently within the general scope of his authority, although not so in fact, on the grounds that such general agent was employed in that character of business, and held out by the company as a person authorized by it and fully to be trusted.” 6 American Law Record, 190. This doctrine, as applied to life insurance companies, is founded in principles of common justice and sound morality. It is but a practical application of the well-recognized principle, that where one of two parties must suffer loss by reason of the fraud of an unfaithful ageut, it must be the company, and not the innocent assured. In 68 Penn. St. 87, it was held, “ where one of two innocent parties must suffer by the fraud or negligence of a third, whichever has accredited him must bear the loss.” This rule is too well settled in principles of justice to require .the support of authorities. 1 Salk. 288.
As a question of fact, it is quite manifest that the agent, Goodwin, when he took the application of Betz, preparatory to the issuance of the policy, received the premium money and note and gave a receipt to Betz in the name of the company, .was acting within the scope of his employment, as agent of the company exclusively. It is also clear that he suppressed the genuine application of. Betz and sent to his employer a spurious application, a copy of which *660 is Exhibit “A,” attached to the answer; that the genuine-application was suppressed by him and the forged one substituted in its place, without the knowledge or connivance-of Betz; that the genuine application was known to Goodwin, who had it and-the examining surgeon’s certificate in his possession, as representing the true condition of the-health of Betz.
There is no proof showing, as claimed by the company, that Betz made- his application upon one of the company’sprinted blanks, and by that was informed that the company could only insure persons in sound health. Nor is there proof, that the laws, charter, by-laws and regulations under which the company was organized, restricted the company in any way. The reply specifically denies that Exhibit “A” is a true copy of Betz’ original and genuine application, but charges that it was wholly and essentially different.
In this state of the case on the facts, and applying to-them the principles of law, as we have found them to be in such cases, we find that a valid contract was entered into. This, because the minds of the parties, through the instrumentality used, in legal contemplation, met, so far as was-necessary for them to meet, in this case to consummate a-valid contract. Betz made a genuine application, placed it,, with the surgeon’s certificate, in the hands of the agent,, paid the premium required óf him for such application,, and the company issued a policy on the representations of its agent, which was accepted by the assured. By reason, of the fraud of its agent, the mind of the company, asa. fact, did not meet that of Betz upon a certain inducement to the contract. This does not vitiate the contract. This •'view of the question is supported by authority. See The Mutual Benefit Life Ins. Co., 31 Iowa, 317 ; New York Life Ins. Co. v. McGowen (Kansas), 6 American Law Reporter, 190; 13 Wall. 223; Bliss on Life Ins., par. 82.
The defendant below, in substance, requested the court to instruct the jury, that the diseased condition of Betz,, as alleged in the answer and not denied, rendered his application “ wholly ineffectual and incapable of obtaining a- *661 policy from the company.” As we look at the whole case, the diseased condition of Betz can not avail defendant as a •defense. The allegations of disease are immaterial. The true condition of the life insured is not a material issue. "When the agent took the application he knew the true •condition of Betz as to health, and his knowledge of the true condition of the life was notice to the company. It ■was no fault of the assured that his genuine application did ■.not reach the home office. This satisfies the demands of fair dealing on the part of the assured, and the company is ■estopped from showing the fraud of its agent upon itself, ■to defeat the just expectations of the beneficiary in the policy.
The fifth charge asked by defendant rests upon no facts ■proven, or presumptions implied. As an abstract proposition, it.was properly refused. Without particularizing further, we think the instructions given to the jury, at the request of the plaintiff’ below, were the law of the case, and the charges requested by defendant below were properly rejected.
The examination of the case has brought us to the conclusion that Betz was without fault in procuring the policy ; and hence, no case is made by the insurance company warranting a rescission of the contract. If the company made a mistake in issuing the policy on a spurious application, made out by its agent, the innocent policy-holder should not suffer, and such mistake, induced by'the fraud of its agent upon the company, affords no ground for a rescission. The tender, by the company, of the premium paid, with interest, and premium note, after the death of Betz, to the executors, on discovering the fraud, does not .authorize a cancellation of the policy. Betz was dead at the time of the alleged tender, and in such case the parties ■could not, we think, by such tender, be placed in statu quo.
Other questions of minor importance are discussed in the briefs of counsel, but none requiring separate consideration.
Judgment of the district court, affirming the judgment of the court of common pleas, is affirmed.