ALICE B. McCOWN, APPELLANT, v. CHARLES GELLER, AS ADMINISTRATOR WITH THE WILL ANNEXED OF THE ESTATE OF MALCOLM S. McCOWN, DECEASED, RESPONDENT.

No. 3583

February 7, 1950.                    214 P.2d 774.

*Anthony M. Turano,* of Reno, and *Philander Brooks Beadle* and *George Olshausen,* both of San Francisco, Calif., for Appellant.

*John R. Ross,* of Carson City, and *Geraldine McCown,* of Oakland, Calif., for Respondent.

## OPINION

By the Court, BADT, J.:

(1) Does a plaintiff in a suit against an administrator in a district court in this state, seeking to impress upon the proceeds of a sale of Canadian property made by her decedent divorced husband, a dower right alleged to exist under English and Canadian law, sufficiently plead such foreign law by quoting lengthy excerpts from opinions of the English and Canadian courts which clearly indicate that her dower right, if any, is statutory, without quoting, referring to or pleading the substance of the statutes in effect at the time during coverture when her inchoate dower right arose, or at the time it became vested (if at all) upon the death of her deceased divorced husband, or at the time he barred or attempted to bar dower by conveyance during his lifetime after the divorce—the divorce being alleged to be ineffective to disturb such rights because it was granted in Nevada on substituted service on the wife residing in California?

(2) May a surviving divorced wife, upon the theory that her former husband's Nevada divorce based on substituted service while she was residing in California could not affect her property rights in other states, recover, in an action in this state against the resident administrator of the estate of her deceased former husband, a money judgment equal to her dower rights in real property (whose sale by the divorced husband produced a part of his personal estate in Nevada) situate in Yukon Territory, Dominion of Canada, to which she would be entitled under asserted English and Canadian law as the deceased's surviving widow—which rights are alleged to depend only upon (1) his seizin during coverture, (2) his death and (3) her survivorship as his widow, and which are alleged to be a life estate in a one-third interest in such lands, of which she could not and cannot be divested without her consent?

While a negative answer to either of these queries must defeat the plaintiff's cause of action, both have been discussed at such length in the briefs that we find it proper to dispose of both of them.

We heretofore held appellant's first amended complaint to be insufficient in its attempted pleading of foreign law. Geller v. McCown, 64 Nev. 102, 177 P.2d 461, and 64 Nev. 106, 178 P.2d 380. The present appeal tests the sufficiency of appellant's fourth amended complaint, as the district court sustained respondent's demurrer thereto without leave to amend and entered judgment for defendant.

The fourth amended complaint alleges (1) the marriage of plaintiff Alice B. McCown and defendant's testator Malcolm S. McCown in Kings County, Washington, in 1927; (2) the death of Malcolm in Winnemucca, Humboldt County, Nevada, in 1941 and his residence in Nevada at the time of his death; (3) the appointment of Geller as administrator C.T.A. by the district court of Humboldt County and the pendency of the probate proceedings; (4) the filing by Malcolm of a divorce complaint in the district court of Humboldt County in July, 1936 on the statutory ground of five years' separation, the making of only substituted service on Alice, then a resident of California, and the entry of a divorce decree in September, 1936, based on such substituted service purporting to dissolve the marriage "but not purporting to settle or affect any rights of either of said parties in any property, marital or otherwise"; (5) the ownership by Malcolm at the time of his death of certain real and personal property valued at $30,287.50, all listed and described, and including two promissory notes of $12,500 each payable to Malcolm and executed by Geller, and Malcolm's ownership of other real property of value and description unknown to the plaintiff; (6) that such additional unknown property is, according to plaintiff's information and belief, situate in Yukon Territory, Canada, and that the two notes of $12,500 each, above mentioned, were given in

exchange for the Hector Claim also situate in Yukon Territory, Canada; that all of said property was owned by Malcolm at the time of his marriage to Alice and that she at no time joined in the conveyance of any interest to Geller or authorized such conveyance or transfer; that Geller is the nephew of Malcolm and that the transfer by Malcolm to Geller was for the purpose of defeating Alice's claims and rights to the property; that she had no knowledge of the transfer or of the notes until after Malcolm's death; and that said notes are a part of the assets of the estate being administered in Humboldt County, Nevada.

Paragraph VII of the complaint is in the nature of a brief setting forth asserted applicable English and Canadian law, as evidenced by opinions of the English and Canadian courts, to the purport and effect that Alice is entitled to a dower right amounting to one third of all of such Canadian properties, which right remained unaffected by Malcolm's conveyance, and which in particular attaches to the two notes aggregating $25,000, alleged to be the proceeds of the sale to Geller of the Hector Claim in Yukon Territory, Canada.

The plaintiff then alleges (8) that she served and filed her claim against the estate "among other things, for one-half of the said estate as the community property of the plaintiff," a copy of which claim is attached to the complaint; (9) that the administrator rejected the claim as "not a legal claim against the estate of said deceased" and served plaintiff with a notice of such rejection; and (10) that one third of the estate "belongs to the plaintiff by way of dower and as the widow of Malcolm S. McCown under the laws of Yukon Territory as aforesaid; that the value of one third of said estate is $15,143.75. She prays for judgment against the administrator for such sum and "such other relief as is meet and proper." The rejected claim is for three items as follows:

1. Claim for one half of estate on the basis of community property_____$15,143.75

2. Claim for one third of the estate on the
   basis of dower ............................................................$10,095.83
3. Claim on the basis of the judgment in
   the California divorce suit, with interest
   thereon at 7% per annum from April 1,
   1937 ........................................................................ 6,100.00

We first proceed to clear away some of the dead wood. While the matters, of which we are thus rather summarily disposing, are the subject of much space in the briefs of counsel (the appeal was not orally argued but was by stipulation submitted on written briefs), we feel that this treatment is justified under propositions of law so well recognized as not to warrant extended discussion or citation of authority.

Defendant's first amended complaint, which we held insufficient on the former appeal, is designated "First Amended Complaint on Rejected Claim." The fourth amended complaint now before us is entitled "Fourth Amended Complaint on Rejected Claim." It is stated by respondent and not denied by appellant that the original complaint and the second and third amended complaints were likewise entitled as being complaints "on rejected claims." It is clear that the claim is not a creditor's claim as contemplated by our recognition of claims against the estates of deceased persons, that it was not based on any transaction with the decedent during his lifetime, that it was never a debt of decedent and that it cannot be made the basis of an action. Indeed, appellant's reply brief on this point suggests that reference in the fourth amended complaint to the claim against the estate may be disregarded as surplusage without interfering with other causes of action therein well pleaded. We accordingly give no further consideration to the sufficiency of the complaint as based upon a rejected claim against the estate.

Appellant likewise does not urge that item of the claim nor that part of her cause of action growing out of what is referred to as the California decree. This is understandable in view of the Nevada decree obtained

by Malcolm against Alice in 1936 as against the California judgment which appears to be an interlocutory decree obtained by Alice in 1937, without a showing of any appearance by Malcolm or service upon him in California. The present relief sought by plaintiff, it should again be noted, is from the same district court in Humboldt County, Nevada, sitting in probate, which entered the divorce decree in 1936.

The fourth amended complaint, both in its allegations and in its prayer, insists that under English and Canadian law plaintiff is entitled to a dower right amounting to one third of the decedent's Canadian estate or the proceeds of the sale thereof; yet so far as such English and Canadian law may be said to be pleaded by the plaintiff, such dower right is restricted to a life estate in a one-third interest of the property. The repeated claims and demands of plaintiff, both in the fourth amended complaint and in appellant's opening and reply briefs, for one third of the property itself are taken to be confined to a demand for a life estate in one third of such property.

Repeated claims are made, both in the fourth amended complaint and in the briefs, to a community property right in the plaintiff amounting to one half of the property of the estate, as well as to a dower right amounting to one third. The two are of course inconsistent with each other. There is no support in the allegations of the fourth amended complaint for the establishment of a community property right, and we dismiss the same from further consideration. We may note, in passing, that the complaint alleges that the property in question was owned by Malcolm at the time of the marriage, so that under our statute, N.C.L., secs. 3355 and 3356, it was Malcolm's separate as distinguished from community property.

Repeatedly throughout appellant's opening and reply briefs is the assertion that appellant's action is for a money judgment against the estate. This is consistent with the allegations of the fourth amended complaint

and with the contentions made in appellant's brief only in the sense and to the extent that it could be taken to mean a request that the court set aside a sum equal to one third of the proceeds of the sale of the Hector Claim in some kind of a trust fund whose interest or "rents, issues and profits" would be payable to the plaintiff during her life, with the principal sum to be thereafter paid over to the remainderman or remaindermen under the testator's will.

Appellant repeatedly insists that she has stated a cause of action for equitable conversion. There is of course no equitable conversion in the case. There was an actual conversion of the Hector Claim by its sale by the testator for a consideration of $25,000 evidenced by the two promissory notes. The principles of equitable conversion are so well recognized by courts of equity that we need not point out that nothing in the fourth amended complaint makes them applicable here.

Plaintiff's fourth amended complaint is predicated upon the contention that her asserted dower right in the Canadian property could not and cannot be displaced without her consent, which consent she has never given, and that the Canadian property has always been, since her marriage to Malcolm, subject to the lien of that right, despite any attempted conveyance by Malcolm during his lifetime. It is clear that an appropriate action *in rem* to enforce such claim (appellant contends that this is not such an action) must necessarily be commenced not only in the jurisdiction of the situs of the property but against the heirs or devisees of the decedent (if he had not conveyed during his lifetime) or against his transferees (if he had conveyed during his lifetime). The only defendant to the present action is Geller as administrator with will annexed of Malcolm's estate.

Appellant's brief also attempts to support her claim for a money judgment against the administrator under the theory that the husband's conveyance was a fraud against creditors. We have in this opinion gone to the length of reciting the allegations of the fourth amended

complaint in considerable detail, and we think that it must be clear therefrom that no such cause of action is pleaded.

With the foregoing observations, we pass then to the two questions requiring consideration, as posed in our opening paragraphs. Assuming for the sake of argument that Malcolm's Nevada decree of divorce in 1936 obtained on substituted service while Alice was a resident of California, and in an action in which she did not appear, could not affect her inchoate and contingent dower rights in property situate in Yukon Territory, Canada,[1] has appellant sufficiently pleaded English and Canadian law to show such right and that upon Malcolm's death such asserted inchoate and contingent dower right became vested entitling her to an assignment of dower in the Canadian property, and that when it appeared that the property had been sold by Malcolm after his divorce but prior to his death, such dower right attached to the proceeds of the sale now in the hands of the Nevada administrator, and was subject to enforcement by an action against the administrator in Humboldt County, Nevada?

The only statutory law pleaded in the fourth amended complaint is set forth as follows: "That the Northwest Territories Act, passed by the British Parliament in

[1]Respondent would not have us indulge even this presumption. He relies upon the proposition: *"Ubi nullum matrimonium ibi nulla dos."* Where there is no marriage, there can be no dower. Appellant's status as a surviving divorced wife, he contends, is entirely different from the status of a surviving widow, and the Nevada decree, though based on substituted service, effectively dissolved the marriage relationship so that a right of dower could never thereafter be successfully asserted even in another state or a foreign country where the right of dower exists. See Hilbish v. Hattle, 145 Ind. 59, 44 N.E. 20, 33 L.R.A. 783; Barrett v. Failing, 111 U.S. 523, 4 S.Ct. 598, 28 L.Ed. 505. Appellant insists that this contention is refuted by Keenan v. Keenan, 40 Nev. 351, 164 P. 351, and Doerr v. Forsythe, 50 Ohio St. 726, 35 N.E. 1055, 40 Am.St.Rep. 703, and that in any event the proceeds of the sale of the Canadian property are now within the jurisdiction of the same court that rendered the divorce decree. So we indulge the presumption of the text for the sake of argument, as further discussion of the point is not necessary to our decision.

1898, which is 60–61 Victoria, c. 28, s. 4 and chapter 50 of the Revised Statutes of Canada, governs the Yukon Territory. Section 11 thereof provides as follows: 'Subject to the provisions of this act, the laws of England relating to civil and criminal matters, as the same existed on the fifteenth day of July, in the year of our Lord 1870, shall be in force in the Territories, in so far as the same are applicable to the Territories, and insofar as the same have not been or are not hereafter repealed, altered, varied, modified or affected by any act of the Parliament of the United Kingdom applicable to the Territories or of the Parliament of Canada, or by any ordinance of the Lieutenant Governor in Council or of the Legislative Assembly 60–61 Victoria c. 28 s. 4.' "

Accepting this allegation as properly alleging that in 1898 "the laws of England relating to civil and criminal matters," as such laws of England existed in 1870 were in force in Yukon Territory insofar as they had not been repealed, altered, varied, modified or affected by any act of the parliament of the United Kingdom or of the parliament of Canada or ordinance of the lieutenant governor in council or the legislative assembly, we then search through the eight pages comprising paragraph VII of the fourth amended complaint to ascertain first what, if any, statutory provisions were in effect in 1870 or had been enacted between 1870 and 1898 or were in effect during the period of coverture, 1927–1936, or at the time of the conveyance between 1936 and 1941 or at the time of Malcolm's death in 1941, pertaining to a surviving wife's right of dower and to ascertain whether in such paragraph VII or elsewhere in the complaint there are any allegations negativing any repeal, alteration, variation, modification or other limitation of any such statutes. We find nothing in this regard. In place thereof numerous decisions of the Canadian and English courts of chancery are cited and quoted at length.

The first reference is to Sheppard v. Sheppard (1867), 14 Grant Ch. 174 (courts of chancery of Upper

Canada), recognizing a widow's right to dower and stating: "We have no *legislative* or judicial policy opposed to this. On the contrary, the *statutory* right to dower *in equitable cases* may be considered as upholding if not *extending* it." (Emphasis supplied.) Thus it appears from the first decision pleaded as a recognition of a widow's dower right that the same was governed by statute prior to 1870 and at least as early as 1867, and was thereafter extended by statute to include equitable estates.

The statute referred to is apparently what is known as The Dower Act of 1833 (3 & 4 Will. 4, c. 105) entitled "An Act for the amendment of the law relating to dower." Section 2 of this act makes the dower right extend, as noted in Sheppard v. Sheppard, to equitable estates. Astonishingly enough, the eye then catches the wording of section 4 of the act which reads as follows: *"No widow shall be entitled to dower out of any land which shall have been absolutely disposed of by her husband in his lifetime, or by his will."* Chitty's English Statutes,. 6th Ed., Vol. IV, p. 197.

█ Our reference to this statute is in full recognition of the rule laid down in our first opinion, 64 Nev. 102, 177 P.2d 461, and on rehearing, 64 Nev. 106, 178 P.2d 380, that the laws of England and Canada relied on by plaintiff are pleaded as facts, and that on demurrer we are considering only the sufficiency of the pleading of those laws as facts. Accordingly we do not quote section 4 of the Dower Act of 1833 for the purpose of contradicting or avoiding plaintiff's allegations as to what the dower law of England or of Canada was or is under plaintiff's quotations from the opinions of the English and Canadian courts. Indeed it is quite possible that the Dower Act of 1833 has since been amended on many occasions.[2] But when the cases relied upon

---

[2] In 24 Earl Halsbury Laws of England (1912) 192, it is indeed stated that *formerly*, as pleaded by the plaintiff, if the husband alienated, he alienated subject to the right of dower but that by virtue of the Dower Act of 1833 the widow is not entitled to dower

by plaintiff as factual allegations of what the foreign law is, clearly indicate to us that the plaintiff's alleged rights are statutory in their origin, we are forced to conclude that the plaintiff's considered and determined refusal to quote or even to refer to any foreign statute vesting in her any dower right leaves the fourth amended complaint fatally deficient. We made this clear in the first appeal of this case in which we quoted with approval the rule laid down by the courts of last resort of Utah, California, and Colorado. When a plaintiff seeks recovery in reliance on a foreign statute, where the existence of a foreign statute is ingredient to his cause of action, where a foreign statute is essential in order to state that cause of action, the same must be pleaded. Although there is some divergence of opinion as to just how the statute should be pleaded, we are inclined to the view that under the generally approved rules of pleading in this jurisdiction, the better method would be to plead *in haec verba,* with proper reference to the place where the same may be found, the applicable parts of the statute on which reliance is placed. But whether it be so pleaded, or attached as an exhibit which is made a part of the complaint, or whether its substance be pleaded (as distinguished from the legal conclusions of the pleader), it is generally agreed by virtually all the courts that, subject to minor exceptions not here applicable, it must be pleaded with certainty

out of any land which has been absolutely disposed of by her husband in his lifetime, or by his will. Various means were used prior to the Dower Act of 1833, by which the husband defeated or barred dower. This was by legal jointure, by equitable jointure or by conveyance to the husband to uses to bar dower. But the statutes of uses (27 Hen. 8, c. 10), by turning uses into legal estates, made them liable to dower and it was accordingly provided that estates might be conveyed by way of jointure, so as to bar the general right to dower. These methods have become obsolete since the right of dower under the Dower Act of 1833 is now placed entirely under the control of the husband id. n. (q). As stated in the text this authority is not quoted for the purpose of showing what the English law of dower is, but simply to indicate the futility of basing a cause of action on foreign *statutory* law without presenting the *statute.*

and with sufficient particularity and distinctness to enable the court to judge its effect. See 41 Am.Jur. 298, Pleadings, sec. 14; Annotation 134 A.L.R. 570, et seq.

The foregoing comment obviates the necessity of discussing at length the other English and Canadian decisions quoted in the eight pages comprising paragraph VII of the fourth amended complaint. Most of them are very early cases. Williams v. Thomas (1909), 1 Ch. 713, is quoted at considerable length. One of the opinions in that case (three separate opinions appear) deals at length with the history of the law of dower from the time of Magna Carta and with the various means of enforcing the right of dower and the modification of the law of dower by sundry *statutes*, as well as the *statutory* extension thereof to estates in equity as referred to in the Sheppard case, again apparently referring to the Dower Act of 1833.

We have carefully examined the excerpts from other opinions contained in paragraph VII of the fourth amended complaint, but we are unable to find therefrom, within the rule above enunciated, a pleading of English or Canadian law showing an inchoate and contingent right of dower in the plaintiff during the period of coverture, from 1927 to 1936, or a vesting of such right of dower upon the death of the decedent in 1941.

On the second proposition, assuming again that the Nevada divorce decree based on substituted service could not affect the wife's dower rights in real property situate in Canada, and assuming that the plaintiff has sufficiently pleaded the law of Canada and Yukon Territory to evidence a dower right of a life estate amounting in value to one third of the Canadian property, which was not barred or defeated by the husband's conveyance during his lifetime, we are still of the opinion that the present action against the Nevada administrator (considered as an action to impress the dower right upon the proceeds of the sale of the Hector Claim) cannot be maintained.

It is stated in 28 C.J.S., Dower, sec. 86 page 177: "A proceeding for the recovery of dower is not one in personam against the heirs at law, but is in the nature of a proceeding in rem against real estate to secure an assignment to the widow of that portion of the real estate in which she is entitled to dower." From the same source and from the authorities cited in support of the text, we find that recovery of dower in sundry jurisdictions has been had (1) through an assignment by summary process of the probate court incident to administration of the husband's estate (in the forum of the situs of the property); (2) by the common law action of dower; (3) by an action for ejectment against the tenant of the lands; and (4) through the concurrent or auxiliary jurisdiction of the courts of equity. Such equitable jurisdiction apparently arises in cases which have always been considered cognizable in equity, such as suits to set aside fraudulent conveyances or conveyances in fraud of creditors or to compel releases of dower obtained from the wife by fraud or in actions for accounting or a suit to declare a trust in real estate, etc. 28 C.J.S., Dower, sec. 86, c. (2) page 178. It is also stated that the common law writs of dower have been abolished in England, but that the substance of the common law action is statutory in many of the states. Appellant however insists that the fourth amended complaint alleges as a fact that the law applicable to the case is to the effect that dower may be assigned against the proceeds of the sale of land in which the widow was dowable and that paragraph VII of such complaint "quotes numerous Canadian and English cases" to such effect. The right to assign dower against the proceeds of sales of dowable lands is discussed in five of the cases advanced. The first is Wilson v. Clark, in the high court of chancery of England (1916), 1 ch. 220. In that case the doweress, more modest in her demands than appellant, did not seek a judgment against the estate for her proportion of the purchase price (one half under gavelkind tenure instead of the dower of one

third as under freehold), but only the present value of her life estate in such one half. *This the court held she could not have,* though it does indeed say that "the rights in the purchase money would correspond with the rights in the lands themselves, that is to say that the widow would be entitled to the income during widowhood of one half of the purchase money instead of receiving one half of the rents of the lands sold." But the plaintiff widow, who brought the action *against the heirs* (or remaindermen) "for the purpose of assignment of dower" was the administratrix of her husband's estate, and had as such administratrix sold the land in the course of administration, presumably under English statutes governing the administration of estates of deceased persons, and apparently, as we deduce from the wording of the opinion, with the consent of the remaindermen. The court held that she had become a trustee of the fund. The sale to third parties had divested both the doweress and the remaindermen of all their rights in the land itself. The very gist of the present action, on the contrary, is that the decedent's sale during his lifetime without the consent of appellant was and still is subject to the lien of her dower right—a life estate in one third of the value. Indeed it is insisted repeatedly in appellant's brief that as against such dower right the sale was void. In Wilson v. Clark the situs of the property within the jurisdiction, the presence as parties of the heirs or grantees of the decedent, and the sale of the property by the probate court with the consent of all of the parties denude the case of any value as a statement of English law applicable here.

The second case pleaded as an allegation of the asserted law that dower may be assigned to the proceeds of the sale is Sheppard v. Sheppard, in the court of chancery for Upper Canada, 14 Grant, ch. 174 (which case, as we have noted above, holds the right to be a statutory one), from which six lines are quoted,

which we find to be entirely inadequate to establish the rule of law asserted.

The third case pleaded as a fact in establishing such rule is Dudley & Ward v. Dudley, 24 Eng.Rep.R. 118, and, so far as the quoted portion of the decision indicates, had to do not with the proceeds of any sale but with the payment of one third of certain "profits" which were treated by the court as "rents."

The fourth case pleaded as a recital of English law is Bishop v. Bishop, 10 L.J. Ch.N.S. 302. Apparently, from the seven lines of the opinion that are quoted in the allegation, dower had already been assigned. The heir had cut timber from the land and the court held that her life estate, like that of any other tenant for life, was "impeachable for waste" and that she was therefore entitled to one third of the income produced from the sale of timber from the land of which she was dowable.

A brief reference in the complaint to Hall's Estate, L.R. 9 Eq. 179, pleads as a conclusion of law on the part of the plaintiff "that the widow has a right of dower in the money paid by the government when land subject to dower is taken in condemnation proceedings." It is obvious such pleading of this case does not establish the rule of law claimed to be pleaded as a fact.

The foregoing discussion disposes of all of the cases pleaded in the fourth amended complaint and relied upon in the briefs as establishing the rule of law under discussion. We have no hesitation in asserting that they do not establish the rule as applied to the circumstances in this case. The other English cases pleaded in paragraph VII of the complaint deal generally with the right of dower and with the effect on such right of a conveyance by the decedent during coverture.

As has been stated, the only one of appellant's several conflicting and inconsistent theories on which a cause of action can be predicated from the facts pleaded in her complaint is to establish her asserted right of dower

in the proceeds of the sale of the Hector Mining Claim made by her divorced former husband. This she seeks to do by an action against the administrator which, if successful, would still leave the Hector Claim and other real property in Yukon Territory subject to the lien of her dower right, or would give rise to other untenable possibilities such as shifting the dower right from one parcel to another, or asserting the same against one grantee and not against another grantee. Outside of the English and Canadian authorities above referred to, she cites no decision of this or any other court sustaining this position. The only case called to our attention, or which we have been able to discover, in which a similar situation is presented, is In re Park's Estate, 31 Utah 255, 87 P. 900, 901. There the surviving widow alleged that during coverture her husband had during his lifetime conveyed certain property in which conveyance she did not join and for which she received no consideration; that Park's grantees went into and continued to retain possession; that a one third in value of the real estate conveyed amounted to $10,733 and that she was entitled under Utah law and as the decedent's surviving widow to recover this sum from the defendant executor who had in his possession undistributed property of the value of over $35,000. She asked that such one third be set aside to her. The trial court sustained a general demurrer and the widow appealed from the dismissal of her application. The Supreme Court of Utah, through Frick, J., referred to the Utah statute providing that one third in value of all the legal or equitable estates in real property possessed by the husband at any time during marriage should be set apart to the surviving wife and said: "It will be observed that appellant * * * does not seek to recover her alleged interest as the widow of John R. Park, deceased, in the specific real estate conveyed by him, but she seeks to obtain the value of one-third thereof out of the property of the estate. In other words, she

seeks to recover the value of a one-third interest in a lump sum against the estate of her deceased husband." The court then traces the history of the law of dower in Utah and showing the enlargement in 1898 from the former life estate in a one-third interest to an actual one-third interest in value of his lands. The husband having conveyed prior to 1898, the court says: "All of them [the lands] were therefore conveyed while the wife was entitled to a life estate only. Notwithstanding this fact, she seeks in this proceeding to recover the full value of the interest in said lands given her under section 2826 (the statute creating the enlarged interest). Whether or not she can legally recover this interest is the question to be determined." (The opinion also determines the question of whether she can legally recover a life estate in such interest.)

■ The court then commented upon the absence of any authority on the point. In language peculiarly apt it said: "As a matter of legal history of which we, in common with all courts, take judicial knowledge, the law giving the wife an interest in her husband's lands has not only existed in some form, either statutory or according to the common law, before and since the formation of our government, but it has frequently been the subject of judicial inquiry in this country in all of its phases for nearly if not quite two centuries. The fact, therefore, that no adjudicated cases can be found upon the precise point involved in this case is a circumstance from which an inference is permissible, more or less strong, that no one has heretofore attempted to recover the wife's share in the lands of her deceased husband conveyed by him during the marriage without her consent, out of his estate, instead of having recourse to the lands so conveyed. While this fact may not be conclusive respecting her right to do this, still it is a very important factor to be considered."

The Utah court then refers to the statutory provision for setting aside to the wife "one-third in value of all

the legal or equitable estates * * *" and says: "This refers to the land itself that was possessed by him during the marriage, not to any kind of property that may be left by him at his death constituting his estate. * * * the wife, if she desires to recover her interest in her husband's lands alienated by him during marriage, without her consent, must resort to the lands themselves. * * * It must not be overlooked that the inchoate contingent interest of the wife in her husband's lands is in the nature of an incumbrance which may or may not become an absolute and enforceable right dependent upon the one fact that she survives her husband. This incumbrance is against the land, and exists against each specific parcel while the right remains inchoate. Neither is the right changed when it becomes vested and enforceable upon the death of the husband, so that it may be shifted at the pleasure of the wife from one parcel to another, or against one grantee, and not against another. The interest of the wife is in the land itself to be apportioned to her one-third in value out of each parcel."

The court then holds that the Utah statute, comparable in all substantial respects to the wife's right of dower enunciated in the English cases, did not confer upon the widow "the right to take the value of her interest in the husband's lands out of his estate." Appellant insists that this case at best simply lays down the rule of law in Utah and cannot contradict English law pleaded as a fact. As to the English law pleaded by appellant we have heretofore commented at length. As to whether the fourth amended complaint states a cause of action, we consider the Utah case not only in point but supported by reason. Appellant further contends that the supreme court of Utah in McNeil v. McNeil, 61 Utah 141, 211 P. 988, "indicates doubt as to the fairness of its holding" in the Park's Estate case. We do not find such to be the case. If anything, In re Park's Estate applies *a fortiori* to our present problem, for there the court had before it all necessary parties and the opportunity to apply the law of the forum in whose

jurisdiction the lands were situate and under whose statutes the rights of the parties were asserted, and no question was raised as to the status of the plaintiff as the surviving widow of the testator.

■ The plaintiff has filed five different complaints. We find no abuse of discretion on the part of the district court in sustaining the demurrer to the fourth amended complaint without leave to amend and entering judgment for the defendant. Indeed, although the appellant asserts error in the sustaining of the demurrer without leave to amend, she indicates clearly that she does not desire to amend further, but prays for a reversal of the judgment with a requirement that the defendant answer the fourth amended complaint. See Keenan v. Keenan, 40 Nev. 351, 360, 164 P. 351, 353.

The judgment is hereby affirmed with costs, but without prejudice to the right of the plaintiff to commence an appropriate action in a court of competent jurisdiction in the Dominion of Canada for enforcement of her asserted dower rights in real property there situate.

HORSEY, C. J., and EATHER, J., concur.